**HEUBLEIN, INC. and Subsidiaries, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 698, Docket 92–6096.

United States Court of Appeals, Second Circuit.

Argued Dec. 21, 1992.

Decided June 29, 1993.

Shelley Cashion, Houston, TX (Chamberlain, Hrdlicka, White, Williams & Martin, of counsel), for plaintiff-appellant.

Sally J. Schornstheimer, Atty., Tax Div., Dept. of Justice, Washington, DC (James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen, Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, Washington, DC, Albert S. Dabrowski, U.S. Atty. D. Connecticut, New Haven, Conn., of counsel), for defendant-appellee.

Before: PIERCE, ALTIMARI and WALKER, Circuit Judges.

PIERCE, Senior Circuit Judge:

In this appeal we are asked to interpret a phrase in a tax provision in the Internal Revenue Code ("I.R.C.") that was never explicitly defined by Congress and has since been repealed. The issue arises in an appeal by Heublein, Incorporated and its subsidiary corporations (collectively, "Heublein") from a judgment of the United States District Court for the District of Connecticut (Alan H. Nevas, Judge), which granted the United States' cross-motion for summary judgment and denied Heublein's motion for summary judgment. For the reasons set forth below, the action of the district court is affirmed in part, reversed in part, and the case is remanded for further proceedings.

## BACKGROUND

Most of the essential facts of this case are not disputed and the following is largely drawn from a stipulation of facts filed by the parties in the district court. Heublein, Incorporated is a corporation formed under the laws of the State of Connecticut, with its principal place of business in Connecticut. It is the parent of a consolidated group of corporations. During the period involved in this litigation—July 1, 1980 through October 12, 1982—Heublein, Incorporated owned all of the issued and outstanding capital stock of Kentucky Fried Chicken Corporation, which, in turn, owned all of the issued and outstanding stock of KFC National Management Company, Kentucky Fried Chicken of Louisville, and Kentucky Fried Chicken of Florida. On October 12, 1982, all of the issued and

outstanding capital stock of Heublein, Incorporated was acquired by another company.

Heublein, for its fiscal periods ending June 30, 1981, June 30, 1982 and October 12, 1982, filed federal corporate income tax returns. Those returns reported Heublein's consolidated total income, consolidated total deductions, consolidated taxable income and consolidated federal income tax liabilities, along with other information required by law. For the fiscal year ending June 30, 1981, Heublein paid $49,080,624 in federal tax liabilities; for the fiscal year ending June 30, 1982, it paid $45,802,689 in federal tax liabilities; and for the fiscal period ending October 12, 1982, Heublein paid $12,218,674 in federal tax liabilities.

Heublein and the Internal Revenue Service ("IRS") subsequently entered into written agreements, extending the statute of limitations period for assessing deficiencies and claiming refunds for the tax returns covering Heublein's fiscal periods ending June 30, 1981, June 30, 1982 and October 12, 1982. Within the time period provided in the written agreements, by letters dated March 11, 1987, Heublein submitted to the IRS claims for refunds of taxes paid during these fiscal periods. In the letters, Heublein asserted that it was entitled to a refund for excess corporate income tax erroneously paid due to its failure to take a credit for qualified wages paid to employees, who were eligible for the Work Incentive Program ("WIN"), as prescribed by §§ 40, 50A and 50B of the I.R.C. of 1954, *infra,* in effect during the applicable fiscal periods. Both parties stipulated that each of the listed employees had worked twenty or more hours per week.

For the pertinent periods in question, § 40 of the I.R.C. permitted a taxpayer to claim, as a credit against taxes, the expenses incurred for the WIN program. *See* 26 U.S.C. § 40 (1982) (repealed 1984). Section 50A outlined how to determine the amount of credit allowable under § 40 for the taxable year as: (A) fifty percent of the first-year WIN expenses, and (B) twenty-five percent of the second-year WIN expenses. *See* 26 U.S.C. § 50A(a)(1) (1982) (repealed 1984). Section 50B contained the definitions for the WIN program. Subsections (a) and (h) of § 50B provided, in pertinent part:

**(a) Work incentive program expenses**

For purpose of this subpart—

**(1) In general**

The term "work incentive program expenses" means the amount of wages paid or incurred by the taxpayer for services rendered by eligible employees.

. . . .

**(4) Limitation on amount of work incentive program expenses**

The amount of the work incentive program expenses taken into account with respect to any eligible employee for any one-year period described [as first-year and second-year WIN expenses] (as the case may be) shall not exceed $6,000.

. . . .

**(h) Eligible employee**

**(1) Eligible employee**

For purposes of this subpart the term "eligible employee" means an individual—

(A) who has been certified by the Secretary of Labor or by the appropriate agency of State or local government as—

(i) being eligible for financial assistance under part A of title IV of the Social Security Act and as having continually received such financial assistance during the 90–day period which immediately precedes the date on which such individual is hired by the employer, or

(ii) having been placed in employment under a work incentive program established under section 432(b)(1) of the Social Security Act,

(B) who has been employed by the taxpayer for a period in excess of 30 consecutive days on a substantially full-time basis . . . ,

(C) who has not displaced any other individual from employment by the taxpayer, and

(D) who is not a migrant worker.

The term "eligible employee" includes an employee of the taxpayer whose services are not performed in connection with a trade or business of the taxpayer.

### (2) Migrant worker

For purposes of paragraph (1), the term "migrant worker" means an individual who is employed for services for which the customary period of employment by one employer is less than 30 days if the nature of such services requires that such individual travel from place to place over a short period of time.

26 U.S.C. § 50B (1982) (repealed 1984).

On August 4, 1989, Heublein filed this tax refund suit in the District of Connecticut, seeking recovery for an overpayment of income taxes for the taxable periods ended June 30, 1981, June 30, 1982 and October 12, 1982. According to the complaint, the IRS "refused and continues to refuse to refund the income taxes claimed by" Heublein. In the Spring of 1990, Heublein filed amended tax refund claims with the IRS for the same taxable periods covered by this suit.

A pre-trial conference was held before the district judge on October 5, 1990. Heublein thereafter filed an amended complaint in the district court, and attached to that complaint were exhibits listing the names and social security numbers of Kentucky Fried Chicken employees for the pertinent periods. According to the amended complaint and attached exhibits, each of the listed employees was an eligible employee within the meaning of the WIN program in effect during 1980, 1981 and 1982. In the stipulated facts, the parties claimed that each of the listed employees had worked twenty or more hours per week. In the amended complaint, Heublein sought refunds of $511,941.58 for its taxable year that ended June 30, 1981; $705,222.45 for its taxable year that ended June 30, 1982; and $199,300.53 for its taxable period that ended October 12, 1982.

The parties engaged in some discovery, and stipulated to certain facts. On February 15, 1991, Heublein moved for summary judgment on the question of whether employment on a "substantially full-time" basis, as that phrase was used in 26 U.S.C. § 50B(h)(1)(B) (1982), meant employment at 19.6 hours per week (seventy-five percent of 26.2 hours per week, supposedly full-time weekly employment in the restaurant industry), or, as the United States contended, whether the phrase meant employment at thirty or more hours per week (seventy-five percent of forty hours per week). In its motion for summary judgment, Heublein conceded that it was not entitled to a tax credit under the WIN program for wages paid from July 1 though October 12, 1982, because it did not obtain the requisite certifications before hiring the employees involved; consequently, it only sought a refund under the WIN program for its tax years ending June 30, 1981 and June 30, 1982.

In its memorandum of law in support of its summary judgment motion, Heublein argued "that as a matter of law in this case, the language 'substantially full-time basis' used in the enabling statute means substantially full time in the restaurant industry, and that under the undisputed facts, substantially full time in the restaurant industry means 20 hours or more per week." On the same day, the United States filed a cross-motion for summary judgment, contending "that an individual must be employed for at least 30 hours a week to be considered 'employed * * * on a substantially full-time basis' in order for the employer to obtain a WIN tax credit with respect to that employee." In its cross-motion, the United States acknowledged that it had stipulated that all of the employees for which Heublein sought a WIN tax credit had worked at least twenty hours a week. In its summary judgment motion, Heublein moved, in the alternative, for the entry of partial summary judgment. Heublein asserted:

if the Court should reject Plaintiffs' contention that a full time work week in this case means "full-time basis" in the restaurant industry, and adopts a position between [Heublein's] and the Government['s], then [Heublein] will be entitled to a partial summary judgment on the Court's legal determination of the meaning of "substantially full time" in this case. [Heublein] will then have to prove the number of its employees that qualify for the WIN credits under the determination established by the Court.

On May 21, 1991, the district judge referred the motions for summary judgment to United States Magistrate Judge Thomas P. Smith for a recommended ruling. On July

26, 1991, the magistrate judge issued an opinion. In that opinion, the magistrate judge noted that the WIN program was enacted with the Social Security Act Amendments of 1967, and that the WIN tax credit was added to the I.R.C. by the Revenue Act of 1971. According to the magistrate judge, the legislative history of the Revenue Act of 1971 indicated that the purpose of the WIN tax credit was to combat certain individuals' "growing dependency on welfare" by encouraging employers to hire welfare recipients in meaningful, potential-bearing jobs and that Congress envisioned coordination between the Department of Labor and the Department of Health, Education and Welfare, which were the two federal agencies charged with jointly administering the WIN program. The Tax Reduction Act of 1975 amended § 50B of the I.R.C. to include the phrase "substantially full-time." In the legislative history to the Tax Reduction Act of 1975, the magistrate judge noted, Congress stated that it believed that the loss of revenue due to the availability of a WIN tax credit to employers who hired recipients of Aid for Families with Dependent Children ("AFDC") would be offset by the revenue saved under the AFDC program. The magistrate judge also looked to 42 U.S.C. § 602(a)(19)(A), which he classified as part of the same "statutory tapestry that includes the WIN tax credit," and to the legislative history of the Tax Equity and Fiscal Responsibility Act of 1982. Section 602(a)(19)(A) of Title 42 mandates that all state plans providing for AFDC programs, require as a condition of eligibility for benefits, that every individual who works less than thirty hours per week register for employment training. Based upon this, he reasoned that "Congress equated '30 hours per week' as the minimum for employment on a 'substantially full-time' basis."

The magistrate judge partially agreed with the analysis of *Lucky Stores, Inc. v. Commissioner*, 92 T.C. 1151, 1989 WL 55669 (1989), a decision by the Tax Court, which considered whether a retail food store chain was entitled to claim a WIN tax credit for wages paid to its non-supervisory, hourly employees. According to *Lucky Stores*, "[i]f Congress had so intended to define 'substantially full-time' as a specific number of hours for all indus-

tries, Congress would not have used the term 'substantially full-time,' because neither 'full-time' [n]or 'substantially' are self-defining terms." 92 T.C. at 1162. The Tax Court adopted a flexible standard to define the phrase based upon "the normal and customary work week for the retail food industry," and defined the phrase as three-quarters of full-time. *Id.* at 1162–63. The magistrate judge believed that *Lucky Stores* should be followed to the extent that it identified three-fourths as an appropriate portion of full-time that must be worked in order for employment to be on a "substantially full-time" basis. Consequently, he stated that the United States' interpretation of the phrase "substantially full-time," as at least thirty hours per week, was more consistent with the apparent purpose of the statutory scheme than Heublein's interpretation of the phrase. The magistrate judge also wrote: "[s]ince none of the plaintiffs' employees for whom WIN credit is sought in this case worked thirty hours or more per week, plaintiffs' claim for an income tax refund on the basis of WIN credit must be denied if the government's interpretation prevails." Thus, it was recommended that Heublein's motion for summary judgment be denied and that the United States' cross-motion for summary judgment be granted.

Heublein filed objections to the magistrate judge's recommended disposition of the summary judgment motions. In its objections, Heublein noted that there was no evidence to support the magistrate judge's assertion that none of its employees worked thirty hours or more per week. Heublein argued that the only evidence before the magistrate judge was that the listed employees worked more than twenty hours per week. It claimed that if the district court adopted the magistrate judge's recommendation and ruled that "substantially full-time" means thirty hours per week, then in accordance with its motion for partial summary judgment, Heublein thereafter would be entitled to prove the amount of wages paid to employees who worked thirty hours or more per week. On September 24, 1991, after conducting a review of the record, the district judge, by endorsement, adopted the recommendation of the magistrate judge on the motions for summary

judgment. On September 27, 1991, judgment was entered in favor of the United States, dismissing the complaint.

On October 11, 1991, Heublein filed a motion, pursuant to Fed.R.Civ.P. 59(e), to alter, amend or vacate the judgment. In the motion, Heublein claimed that the entry of judgment was premature. It further argued that even if the proper threshold for WIN tax credit eligibility was thirty hours per week, it was entitled to a refund of taxes for wages paid to some of its listed employees—namely, $171,680 for the 1981 tax year, and $248,840 for the tax year ended June 30, 1982, plus interest. Heublein asked the district court to consider evidence relating to the hourly work weeks of employees listed in attached exhibits. These exhibits had not been submitted earlier in connection with the motion for summary judgment because, according to the memorandum in support of the motion to alter, amend or vacate the judgment, they were not in a form that could be readily used. That memorandum also noted that Heublein, in its alternative motion for partial summary judgment, had requested an opportunity to present final data on its Kentucky Fried Chicken employees who worked thirty hours or more per week. Attached to the motion to alter, amend or vacate the judgment were an exhibit and affidavits from Ann Hancock, the principal consultant of the private company hired by Heublein in connection with the certification of employees in Heublein's Kentucky Fried Chicken restaurants, and from Robert I. White, one of the attorneys representing Heublein in this case.

Hancock, in her affidavit dated October 4, 1991, stated that since the initial listing of the employees, Government Program Services, Inc., the company for which she worked, had further limited the computer matching of Heublein's Kentucky Fried Chicken restaurants' new employees, who had worked at least thirty consecutive days. These new employees' records had been cross-referenced with records from the state departments of social services or employment services to determine whether those persons had received AFDC benefits for the ninety days prior to the start of the employment date provided by Heublein. Hancock assert-

ed that she now had in her possession a list of these employees who worked thirty hours or more per week.

White, in his affidavit, dated October 10, 1991, stated that an understanding had been reached on October 5, 1990, at the sole pretrial conference presided over by the district judge, whereby the parties agreed to move for summary judgment on the legal issues, and once the district court decided those legal issues, the parties then would "grapple with the factual issues of how many people qualified under the threshold number of hours" the court had determined was necessary to qualify an employee as a "substantially full-time" employee. White stated that it took approximately four weeks to produce each computer-generated list of the designated Kentucky Fried Chicken employees described in Hancock's affidavit, and that for each list Heublein was charged approximately $5,000. Upon receipt of the magistrate judge's recommendation, White asserted, Heublein requested from Government Program Services the final data on employees who had worked thirty hours or more per week, and that data was received by Heublein on October 3, 1991.

One month later, on November 8, 1991, Heublein filed supplemental exhibits, listing employees who worked more than thirty hours per week. The United States filed a response to Heublein's motion to alter, amend or vacate the judgment, claiming that the information supplied by Heublein "ha[d] been available to plaintiffs since before they commenced this action."

On November 12, 1991, the district court referred the matter to the same magistrate judge who had issued the initial recommendation on the motions for summary judgment. On January 3, 1992, the magistrate judge determined that the materials submitted by Heublein were not new or newly discovered evidence, that there had not been any manifest error of law or fact, and recommended that the motion to alter, amend or vacate be denied. Heublein filed objections to this recommendation. On February 20, 1992, by endorsement, the district judge adopted the magistrate judge's ruling on the motion to alter, amend or vacate the judg-

ment, and denied Heublein's motion. Heublein filed a timely notice of appeal.

## DISCUSSION

On appeal, Heublein contends that the district court erred (1) in concluding that "substantially full-time" under the WIN program constitutes thirty hours per week, and in not holding, in accordance with *Lucky Stores*, that the phrase requires the adoption of a flexible standard that varies from industry-to-industry; (2) in granting summary judgment for the United States based upon a factual finding that none of Heublein's employees worked at least thirty hours per week; and (3) in denying Heublein's motion to alter, amend or vacate the judgment, which sought to proffer newly discovered evidence. We agree with the action of the district court in part; we disagree in part; and we remand for further proceedings.

Summary Judgment Standards

█ In a tax refund suit, the burden of proof is on the taxpayer to prove an overpayment of tax, *Caplin v. United States*, 718 F.2d 544, 549 (2d Cir.1983), and the amount he is entitled to recover. *DeLorenzo v. United States*, 555 F.2d 27, 29 (2d Cir.1977). In attempting to demonstrate that it had overpaid its taxes for the applicable tax years, Heublein moved for summary judgment on the question of whether it was entitled to a tax credit under the WIN program for certain of its new employees who had worked twenty or more hours each week during the pertinent tax years and whether it was entitled to a refund of federal income taxes based upon a credit under the WIN program. The United States cross-moved for summary judgment, offering an interpretation of the statute in question different from Heublein's. The district court agreed with the government's view and concluded that the statute required that the employees had to have worked at least thirty hours per week; it thus granted the United States' motion for summary judgment.

█ This Court reviews a district court's entry of summary judgment *de novo. Regan v. Boogertman*, 984 F.2d 577, 579 (2d Cir.1993). To obtain a summary judgment there must be "no genuine issue as to any material fact" and "the moving party [must be] entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Genuine issues of fact are not created by conclusory allegations. Summary judgment is proper when, after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party. *See Matsushita Elec. Industr. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). There must be more than a "scintilla of evidence" in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

█ In this case, motions for summary judgment were filed both by Heublein and the United States. As was noted in *Schwabenbauer v. Board of Educ. of Olean*, 667 F.2d 305 (2d Cir.1981), when both sides move for summary judgment, neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it. When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other. *Id.* at 313. "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* at 314. With these principles in mind, we now turn to Heublein's contentions on appeal.

### 1. Issues of Law

█ Questions of statutory construction and legislative history present legal issues that may be resolved by summary judgment. *Oklahoma ex rel. Dep't of Human Servs. v. Weinberger*, 741 F.2d 290, 291 (10th Cir. 1983). In order to determine the meaning of the disputed provision, we review, in some detail, the legislative history of the WIN tax credit.

### a. Legislative Developments

In the Social Security Amendments of 1967, Congress established the WIN program, as part of the Social Security Act. Pub.L. No. 90–248, § 204, 81 Stat. 821, 884–92 (1968). The purpose of the program was to train individuals receiving assistance via the AFDC program, through special work projects and work training, and to place those individuals in employment within the national economy. *Id.* at 884. The Secretary of Labor was directed to establish WIN programs in every State and in each political subdivision of each State where there were a sufficient number of individuals over the age of sixteen who were receiving AFDC assistance. *Id.* at 884–85.

According to the accompanying Senate Report, under the WIN program, state public assistance agencies were to refer recipients to the Department of Labor, which would place them in one of three categories. S.Rep. No. 744, 90th Cong., 1st Sess. (1967), *reprinted in,* 1967 U.S.C.C.A.N. 2834, 2859. As to those in the first category, the Secretary of Labor was to establish an employability plan for each person and make arrangements for as many of them as possible to move into regular employment. Those placed in the second category would receive training appropriate to their needs and a weekly incentive payment; after such training, as many as possible would be referred to regular employment. As to those in the third category, federal employment offices were to make arrangements for special work projects designed to employ those who were found to be unsuitable for training and for whom no jobs in the regular economy could be found at the time. *Id.* at 2859. The Senate Report went on to note that, in most instances, the individuals participating in the WIN program would no longer receive a check from a public assistance agency. Rather, the individual would be paid by an employer for services performed, and the entire paycheck would be subject to income, social security, and unemployment compensation taxes. *Id.* at 2860.

In 1971, a tax credit was added to the I.R.C. for wages paid or incurred by taxpayers through the WIN program. *See* Revenue Act of 1971, Pub.L. No. 92–178, § 601, 85 Stat. 497, 553. Under the Revenue Act of 1971, 26 U.S.C. § 50B(a) was amended to permit taxpayers to claim the WIN tax credit for wages paid to those employees who had not displaced any other individual from employment and for whom the Secretary of Labor certified had been placed in employment under a WIN program. The House Report accompanying this tax credit provision stated:

> The Work Incentive Program was created by the Congress in 1967 as an attempt to cope with the problem of rapidly growing dependency on welfare by providing recipients with the training and job opportunities needed to help them become economically independent. Unfortunately, the results have been disappointing, and few participants in the Work Incentive Program have been placed in employment following completion of participation in the program.
>
> . . . .
>
> Employment in the private sector represents our major hope for leading present welfare recipients to economic independence. As an incentive for employers in the private sector to hire individuals placed in on-the-job training or employment through the Work Incentive Program, the committee bill would provide a tax credit. . . .

The tax incentive is a key provision of the committee bill. The committee recognizes that no work incentive or job training program can ever be successful unless it has the full cooperation of private business. Many welfare recipients will be very poor employment risks, requiring special training before they can achieve full productivity. It is unrealistic to expect that the business community will undertake this kind of new responsibility without some form of extra financial help in the initial stages. The job development tax incentive is designed to bridge the gap that now exists between the Work Incentive Program and private employment. The committee feels that use of the job development tax credit by employers can only result in savings to taxpayers. There has

been virtually no on-the-job training or placement of welfare recipients in private employment under the present program. Any use of the tax credit, therefore, will amount to employment that would in all likelihood not otherwise have taken place....

H.R.Rep. No. 533, 92d Cong., 1st Sess. (1971), *reprinted in,* 1971 U.S.C.C.A.N. 1825, 2036. Regulations were promulgated by the Secretary of Labor that required all AFDC applicants and recipients to register for an employment search program, as a condition of eligibility to receive AFDC payments. *See* 29 C.F.R. § 56.4 (1972).

In 1975, the WIN tax credit was amended. The amendment had the effect of further defining the pool of potentially eligible employees for whom a taxpayer could receive WIN tax credit. *See* Tax Reduction Act of 1975, Pub.L. No. 94–12, § 401, 1975 U.S.C.C.A.N. (89 Stat.) 26, 45–46. In accordance with the Tax Reduction Act of 1975, 26 U.S.C. § 50B(g)(1)(B) [1] permitted taxpayers to claim the WIN tax credit for wages paid to those employees who had been certified by the appropriate governmental agency as being eligible for, and who had continuously received, AFDC financial assistance during the ninety-day period immediately preceding the date on which the individual was hired by the taxpayer; provided that the employee had not displaced any other individual from employment, was not a migrant worker, and had "been employed by the taxpayer for a period in excess of 30 consecutive days on a substantially full-time basis...." The phrase "substantially full-time" was not defined in either the statute or in the accompanying legislative history to the Tax Reduction Act of 1975. *See* S.Rep. No. 36, 94th Cong., 1st Sess. 1, *reprinted in,* 1975 U.S.C.C.A.N. 54, 117–18.

Related, subsequent legislation does, however, provide some guidance as to the meaning of the phrase. The WIN tax credit was amended again in 1982 via the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, § 154, 96 Stat. 324, 396. In that Act, Congress addressed the Secretary's au-

thority to prescribe regulations governing WIN registration and participation. The Senate Report accompanying the Act, in pertinent part, stated:

> Current regulations provide sanctions for AFDC recipients who are required to register for the Work Incentive Program (WIN) if they voluntarily quit work, reduce earnings, refuse employment, or refuse assignment to a community work experience project. Sanctions may not be applied in the case of persons who are not currently required to register, including persons who are employed 30 hours or more a week....
>
> The committee amendment would give the Secretary authority to prescribe in regulations the period for which a sanction could be imposed if an individual (who is exempt from WIN registration because he is employed 30 hours or more a week ...): (1) refuses a bona fide offer of employment, (2) terminates employment, or (3) reduces his hours of employment, without good cause....
>
> The committee believes that persons who are exempt from WIN registration ... because they are already employed on a substantially full-time basis should be subject to sanction when they terminate, reduce, or refuse employment. The basis for their exemption from WIN has no relation to their employability. This amendment would close a loophole in current law by applying sanctions to all employable individuals as originally intended in the law.

S.Rep. No. 494, 97th Cong., 2d Sess. 45 (1982), *reprinted in,* 1982 U.S.C.C.A.N. 781, 820–21.

In the Tax Equity and Fiscal Responsibility Act of 1982, Congress added subsection (35) to § 402(a) of the Social Security Act, codified at 42 U.S.C. § 602(a). Newly added subsection (35) required individuals claiming aid under 42 U.S.C. § 602(a)(19)(A) to participate in an employment search program, including registering, in accordance with § 602(a)(19)(A). Individuals who failed,

---

1. The employee eligibility requirements were redesignated as subsection (h) in 1978. Revenue Act of 1978, Pub.L. No. 95–600, § 322(h), 1978 U.S.C.C.A.N. (92 Stat.) 2763, 2837.

without good cause, to comply with § 602(a)(35) were subject to sanctions. 42 U.S.C. § 602(a)(35)(C) (1982).[2] Thereafter, the Secretary of Labor issued federal regulations, *see* 29 C.F.R. § 56.20(b)(10) (1983), entitled, "Registration requirements for AFDC applicants and recipients; State plan requirements," which excluded from participation in an employment search program any "person who is working not less than 30 hours per week in unsubsidized employment expected to last a minimum of 30 days." Under § 602(a)(19)(A)(vii) (1982), as a condition for receiving AFDC funds, individuals were required to register for manpower services, training, employment and other employment-related activities, unless such an individual was, *inter alia,* "a person who is working not less than 30 hours per week."

### b. Heublein's Arguments

Apparently, due to the legislative silence as to the meaning of the phrase "substantially full-time" as it was used in § 50B(h)(1)(B) (1982), which was added via the Tax Reduction Act of 1975, Heublein relies upon an IRS regulation for the WIN tax credit that was later proposed, as providing a definition of the phrase. *See* 45 Fed.Reg. 28,758 (1980) (proposed Apr. 30, 1980). Section 1.50B–1 of the proposed regulation contained definitions of WIN expenses. An eligible employee was defined in § 1.50B–1(e)(2) as an individual who, *inter alia,* "has been employed by the taxpayer for a period in excess of 30 consecutive days on a substantially full-time basis...." The proposed regulation, in pertinent part, further provided:

> The reference in paragraph (e)(2) of this section to employment on a "substantially full-time basis" means that during each period of 7 consecutive days in the period of "30 consecutive days" of employment referred to in that paragraph the employee's work schedule must contain a minimum of three-fourths the number of hours

of work that are normal to the occupation or 22.5 hours, whichever is greater. *Id.* at 28,761.[3]

Based upon this proposed regulation, Heublein contends that the district court erred in concluding that "substantially full-time" should be interpreted as a fixed thirty hours per week standard instead of as a flexible industry-by-industry requirement. According to Heublein, the phrases "substantially full-time" and "full-time," as they relate to employment requirements have a long history in the I.R.C., with such standards referring to the "normal" or "customary" standards in the particular industry in which the taxpayer is a member. Heublein asserts that "[s]ince Congress chose to use the phrase 'substantially full-time' without further definition in the WIN tax credit statute, surely it must have been satisfied with the then-existing definitions given in the Treasury regulations defining identical income tax language." It contends that Congress knew how to define "full-time" in terms of number of hours worked when it wanted to set a non-variable standard for purposes of the I.R.C., and that Congress knew how to establish variations from such a standard. Heublein argues that the portions of legislative history and the statutes that the district court relied upon were not in the I.R.C. and thus did not have any relevance to the meaning of the disputed phrase. Heublein further maintains that the district court's reliance on regulations promulgated by the Secretary of Labor and the Secretary of Health and Human Services was misplaced because Congress had not specified that these executive agencies, rather than the Secretary of Treasury, who generally promulgates regulations for the I.R.C., issue regulations applicable to the WIN tax credit.

### c. Analysis

■ We are not persuaded by Heublein's arguments. Based upon the legislative history underlying the enactment of both the WIN program in 1967, and the WIN tax

**2.** Section 602(a)(35) was repealed by the Family Support Act of 1988. Pub.L. No. 100–485, § 202(b)(3), 1988 U.S.C.C.A.N. (102 Stat.) 2343, 2377.

**3.** This proposed regulation was never adopted and was withdrawn on November 8, 1983. 48 Fed.Reg. 51,331 (1983).

credit in 1971, as well as subsequent amendments of the WIN tax credit provision, and related statutes pertaining to the AFDC program, we conclude that the district court did not err in adopting the United States' interpretation that "substantially full-time," as used in the WIN program, meant employment of thirty or more hours a week.

■ In interpreting a provision of the I.R.C., we look to the ordinary, everyday sense of the words used. *Commissioner v. Soliman,* — U.S. —, — – —, 113 S.Ct. 701, 705–06, 121 L.Ed.2d 634 (1993). "Substantially" is defined as "without material qualification;" and as "in a substantial manner." Black's Law Dictionary 1428–29 (6th ed. 1990). "Full-time" means "employed for or working the amount of time considered customary or standard." Webster's Third New International Dictionary 919 (1981). The district court accepted both parties' submission that three-fourths is the appropriate multiplier to determine if an employee had worked on a "substantially full-time" basis; the parties renew that claim in this Court, thus it is unnecessary for us to decide whether another multiplier should be employed. Yet, we must determine whether Congress, when it used the phrase "substantially full-time" intended to adopt a flexible standard that varies from industry-to-industry or if it sought to impose a specific number of hours for all WIN program participants.

Other than *Lucky Stores*—a case upon which Heublein heavily relies—we are unaware of any case that discusses the meaning of the term at issue herein. In *Lucky Stores,* in attempting to ascertain the meaning of the phrase, the Tax Court relied upon 26 U.S.C. § 214 (Supp. IV 1974) and an IRS regulation for § 214 because both had utilized the phrase "substantially full-time." 92 T.C. at 1161–63. Section 214 of the I.R.C., which had been repealed for tax years beginning after December 31, 1975, *see* Tax Reform Act of 1976, Pub.L. No. 94–455, § 504(b), 90 Stat.

1520, 1565, allowed for deductions for employment-related expenses for household and dependent care services, if both spouses were gainfully employed on a "substantially full-time" basis. We believe that the district court correctly rejected *Lucky Stores'* reliance upon the repealed § 214, and reasonably relied upon subsequent amendments of the related AFDC statutes, and the views expressed in the legislative history, to ascertain the meaning of the disputed phrase. *Cf. Seatrain Shipbuilding Corp. v. Shell Oil Co.,* 444 U.S. 572, 596, 100 S.Ct. 800, 814, 63 L.Ed.2d 36 (1980) ("[W]hile the views of subsequent Congresses cannot override the unmistakable intent of the enacting one, such views are entitled to significant weight, and particularly so when the precise intent of the enacting Congress is obscure.") (citations omitted).[4]

As the legislative history of the WIN tax credit indicates, the WIN tax credit was passed by Congress to provide an incentive to private-sector employers to hire AFDC recipients, as a means of "leading present welfare recipients to economic independence." AFDC applicants and recipients who worked less than thirty hours per week were required to participate in an employment search program; after 1982, according to the legislative history of 42 U.S.C. § 602(a)(35), those who quit working or reduced their hours of employment below thirty hours per week, without good cause, could be sanctioned, and also could be required to participate in an employment search program. The goal of the WIN program, was to provide training, employment and other employment-related activities to AFDC recipients, all with the ultimate objective of assisting AFDC recipient's in securing full-time employment.

We agree with the magistrate judge's observation in reading "substantially full-time" in the context of the purpose of the WIN program and the related provision concern-

---

4. *See generally* Michael Livingston, *Congress, the Courts, and the Code: Legislative History and the Interpretation of Tax Statutes,* 69 Tex.L.Rev. 819, 871–87 (1991); *see also* Bradford L. Ferguson et al., *Reexamining the Nature and Role of Tax Legislative History in Light of the Changing Realities of the Process,* 67 Taxes 804, 821 (1989)

("[W]here the operation of the statute being enacted depends in turn upon the construction of a prior statute [the] specific and official expression [in committee reports] of what the prior statute is assumed to mean is integral to the current enactment and should be treated as authoritative and controlling.").

ing registration requirements by AFDC recipients:

> ... Were [Heublein's] argument to prevail, an employer would be entitled to a WIN tax credit for wages paid to an employee whose hours are so scant that the employee does not even qualify for an exemption for the WIN registration requirement. As a non-exempt individual, that employee would be required to perform all of the training and job search requirements which are demanded of one who performs no work at all. And if offered "employment" elsewhere, the individual would be required to accept that employment.
>
> Rather than stemming the drain on the public fisc by weaning individuals from welfare through financial independence, [Heublein's] interpretation would only strain public resources further by subsidizing employment that is not likely to result in economic self-sufficiency. This would be neither fiscally responsible, nor in accord with Congress's goal of encouraging employment that is designed to promote independence from welfare. Its only benefit would be to the employer who would obtain "cheap labor" and, hence, increase its profits at the public's expense.
>
> In the absence of evidence clearly warranting it, a federal court should not impute to Congress an intent that is likely to produce such a bizarre result.... In reality, however, there is no evidence or other principled basis for the court to conclude that Congress ever intended 19.6 hours of work per week to qualify as "substantially full-time" employment, or that thirty hours per week is "full-time."

The district court correctly ruled that, as a matter of law, the phrase "substantially full-time," as it was used in 26 U.S.C. § 50B(h)(1)(B) (1982), meant employment at thirty or more hours per week.

### 2. Issue of Fact

◼ Although the district court's ruling on the meaning of the phrase "substantially full-time" was correct, we do not believe that, on the record herein, the entry of summary judgment in favor of the United States was proper. There is an issue of fact precluding the entry of summary judgment—namely, how many, if any, of Heublein's employees, during the applicable periods, worked at least thirty hours per week.

On appeal, Heublein claims that included on the list submitted in support of its motion for summary judgment are employees who worked at least thirty hours per week. Although Heublein did not specify these employees prior to the entry of judgment, the record does indicate that Heublein's failure to do so was somewhat understandable. Prior to the entry of summary judgment, Heublein specifically objected to the magistrate judge's assertion that none of its employees worked thirty hours or more per week, and requested an opportunity to prove the amount of wages paid to employees who worked thirty hours or more per week. Heublein claims, without contradiction by the United States, that during the only pre-trial conference before the district judge an understanding was reached whereby the court would first establish the proper legal standard for determining the WIN tax credit, and thereafter, the court would determine the amount of credit to which Heublein was entitled. This allegation of such an understanding is supported by the motion for partial summary judgment, in which Heublein argued that if the district court determined the meaning of "substantially full-time" different from the definition proposed by Heublein, then Heublein would have to prove the number of its employees that qualified under that definition. Further, even though the United States moved for summary judgment on the thirty hours per week standard, the government did not claim that all of Heublein's employees worked less than that standard.

We are persuaded that, at this point, the district court should not have entered judgment in favor of the United States. Heublein contends that the evidence submitted in its Rule 59(e) motion was unavailable to it prior to September 27, 1991, when the judgment was entered in the district court. It asserts that there were delays in obtaining the computer data because the corporation that owned the data went out of business and that it "was purely coincidental" that Heublein obtained the data immediately after the district court's adoption of the magistrate

judge's recommendation. In essence, it appears that Heublein asks for no more than the same privilege sometimes accorded the government in tax litigation. *See, e.g., Smith v. Fournier,* 614 F.Supp. 314, 318 (E.D.Pa. 1985) (IRS' inability to retrieve material from computer system, which though technically within IRS' physical proprietary control, was as practical matter neither accessible to, nor available to, IRS). We note that the exhibits and other evidence Heublein submitted in support of its motion appear to be highly convincing as to the underlying tax credits. We believe that it would be unjust to deny Heublein's claim as there is apparently no dispute that, as discussed above, Heublein is entitled to a refund of some amount, and that there is apparently no dispute that there was an understanding reached before the district judge on the prosecution of this litigation.

### CONCLUSION

For the foregoing reasons, we affirm the district court's ruling as to the meaning of "substantially full-time," as that phrase was used in 26 U.S.C. § 50B(h)(1)(B) (1982), and we reverse as to the factual determination of whether any of Heublein's employees qualify under that standard. The matter is remanded for consideration of the amount of a refund, if any, to which Heublein is entitled under the WIN tax credit provision. The court is directed to take such action as is consistent with our determinations herein.