**INVACARE CORPORATION and I.H.H. Corp., Plaintiffs,**

**v.**

**HEALTHDYNE TECHNOLOGIES, INC., et al., Defendants.**

Civil Action No. 1:97–cv–0205–CC.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 3, 1997.

*ORDER*

COOPER, District Judge.

Pending before the court in the above-styled case are the following motions: Plaintiffs' Motion for Preliminary Injunction [37–1], Defendant Healthdyne Technologies, Inc.'s Motion for Summary Judgment [20–1], Plaintiffs' Motion for Summary Judgment

[42–1] and Plaintiffs' Motion to Strike Portions of Affidavit of Donald G. Margotta [53–1].

## I. SUMMARY OF FACTS

Healthdyne Technologies, Inc. ("Healthdyne") is a Georgia corporation in the business of developing and manufacturing respiratory and sleep disorder products. Invacare Corporation is an Ohio corporation, and I.H.H. Corp. is its wholly owned subsidiary (collectively referred to as "Invacare" or "Plaintiffs"). Invacare designs, manufactures and distributes medical equipment for the home health care and extended care markets.

On January 2, 1997, Invacare, through its chairman, proposed an acquisition in which Healthdyne shareholders would receive $12.50 in cash for each share of Healthdyne common stock. Healthdyne's Board of Directors rejected the proposal on January 23, 1997, finding that the offer was "grossly inadequate" from a financial perspective. On January 24, 1997, Invacare commenced an all cash tender offer for all outstanding shares of Healthdyne common stock for $13 per share. Healthdyne concluded that the offer was still "grossly inadequate" and urged its shareholders not to accept the offer. Invacare subsequently gave Healthdyne notice that it would propose a new slate of directors at the next annual meeting of Healthdyne. The meeting is currently scheduled for July 30, 1997. On March 31, 1997, Invacare increased its offer to $13.50 per share, but this offer was also rejected after Healthdyne's board advised that it was "grossly inadequate." Shortly before the hearing on Invacare's Motion for Preliminary Injunction and the Cross–Motions for Summary Judgment on Healthdyne's Counterclaim, Invacare raised its offer to $15 per share, and this offer was also rejected.

Healthdyne's Board of Directors has put in place a shareholders rights plan (the "rights plan"), or "poison pill" as it is sometimes called, to help protect against hostile takeovers. A shareholders rights plan is commonly used as a takeover defense because it makes consummation of a tender offer pro-

hibitively expensive until such time as the rights are redeemed.[1] When Healthdyne's rights plan is triggered, each shareholder with the exception of the hostile bidder (in this case Invacare) will have the right to purchase additional shares of common stock at half-price under certain circumstances. Healthdyne's rights plan also has a "continuing director" feature, which requires that any redemption or amendment of the rights plan be approved by one or more directors who were members of the Board prior to the adoption of the rights plan, or who were subsequently elected to the Board with the recommendation and approval of the other continuing directors. The effect of the continuing directors provision is that if Healthdyne's shareholders vote at the July 30th meeting to replace the incumbent directors with Invacare's slate of directors, the new Board of Directors could not redeem the rights plan because they would not be "continuing directors."

Invacare seeks a preliminary injunction declaring that the continuing directors provision is invalid and directing the Healthdyne Board of Directors to remove the provision from the rights plan. Invacare has also proposed a bylaw to be voted upon by Healthdyne's shareholders at the annual meeting. The proposed bylaw requires the current Board of Directors of Healthdyne to amend the rights plan to eliminate the continuing directors feature. Healthdyne contends that the proposed bylaw violates Georgia law.

## II. DISCUSSION

### A. *Plaintiffs' Motion for Preliminary Injunction*

■ To be entitled to a preliminary injunction, the movant must show: (1) that movant has a substantial likelihood of success on the merits; (2) that the movant will suffer irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant is greater than any damage the proposed injunction may cause the opposing party; and (4) that the injunction will not disserve the public interest. *Carillon Im-*

---

1. Invacare also has a shareholders rights plan,     although their plan is not in issue in this case.

*porters v. Frank Pesce International Group, Ltd.,* 112 F.3d 1125, 1126 (11th Cir.1997).

O.C.G.A. § 14–2–801(b) provides:

All corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors, subject to any limitation set forth in the articles of incorporation, bylaws approved by the shareholders, or agreements among the shareholders which are otherwise lawful.

Invacare argues that the continuing directors provision is illegal under § 801(b) because it is a significant limitation on the Board of Directors' powers, and the limitation is not included in the articles of incorporation or the bylaws.

O.C.G.A. § 14–2–624(a) provides:

A corporation may issue rights, options, or warrants with respect to the shares of the corporation whether or not in connection with the issuance and sale of any of its shares or other securities. The board of directors shall determine the terms upon which the rights, options, or warrants are issued, their form and content, the consideration for which they are to be issued, and the terms and conditions relating to their exercise, including the time or times, the conditions precedent, and the prices at which and the holders by whom the rights, options, or warrants may be exercised.

Subsection (c) provides, in relevant part, that "[n]othing contained in Code Section 14–2–601 shall be deemed to limit the board of directors authority to determine, in its sole discretion, the terms and conditions of the rights, options, or warrants issuable pursuant to this Code section. Such terms and conditions need not be set forth in the articles of incorporation." The Official Comment to O.C.G.A. § 14–2–624(c) reveals that the board of directors' discretion to set the conditions of a rights plan is limited only by their fiduciary obligations to the corporation.

The Healthdyne Board of Directors exercised its discretion to include a continuing directors provision in the rights plan. Invacare, in essence, contends that the court should read an exception into § 14–2–624 so

that the board of directors could never exercise its discretion to include a provision which limits the authority of future boards of directors; however, to read such an exception into § 624 is clearly contrary to the plain language of the statute.

Invacare relies primarily on *Bank of New York v. Irving Bank Corporation,* 139 Misc.2d 665, 528 N.Y.S.2d 482 (1988), in which the New York Supreme Court invalidated a continuing directors provision because it restricted the power of the Board of Directors to manage the corporation. The *Bank of New York* case involved a New York statute that provided that "[a] restriction of the board's power to manage the business of the corporation is invalid unless (1) all of the incorporators or all of the shareholders of record have authorized such provision on the certificate of incorporation...." The Georgia Business Corporation Code has no such express limitation within its statutory scheme, and this court does not read § 14–2–801 to include such a limitation, particularly in light of § 14–2–624(c) which gives the board of directors sole discretion to determine the terms and conditions of the rights agreement. Furthermore, § 624(c) provides that the terms and conditions, including any restrictions, do not have to be set forth in the articles of incorporation.

The court also notes that Georgia corporate law embraces the concept of continuing directors as part of a defense against hostile takeovers. The Georgia Fair Price statute provides that where a vote is needed to approve a business combination, that business combination must be "(1) unanimously approved by the continuing directors provided that the continuing directors constitute at least three members of the board of directors at the time of such approval; or (2) recommended by at least two-thirds of the continuing directors and approved by a majority of votes entitled to be cast by holders of voting shares, other than voting shares beneficially owned by the interested shareholder who is, or whose affiliate is, a party to the business combination." O.C.G.A. § 14–2–1111. Also, the Georgia Business Combination statute provides that a bylaw opting into the statute cannot be repealed without "the affirmative

vote of at least two-thirds of the continuing directors . . . ." O.C.G.A. § 14–2–1133(b). Thus, the continuing director features of these statutes recognize a benefit to shareholders in not allowing a hostile bidder to acquire a corporation by installing its own board of directors to eliminate any takeover defense mechanisms of a rights plan. The court recognizes the distinction between these statutory provisions for continuing directors and the provision contained in Healthdyne's rights agreement; however, the court is satisfied that the concept of continuing directors is an integral part of a takeover defense and is not contrary to public policy in Georgia.

Invacare also argues that the continuing director provision of the rights plan violates the directors' fiduciary duties. Georgia law requires directors to perform their duties in good faith in a manner believed to be in the best interest of the corporation. O.C.G.A. § 14–2–830(a)(1). Invacare has not shown, and does not argue, that the Healthdyne directors violated their fiduciary duties by implementing the rights plan with the continuing directors provision, but rather Invacare argues that such provisions are invalid as a matter of law. The court concludes that Healthdyne has not breached its fiduciary duties as set forth by Georgia law.

Invacare also contends that the continuing directors provision interferes with the exercise of shareholder voting rights and urges this court to adopt a rule requiring the directors to show a "compelling justification" for their actions. The court finds that a "compelling justification" requirement is inconsistent with the standard set forth in O.C.G.A. § 14–2–830. Moreover, the court concludes that unlike the situation in *Blasius Industries v. Atlas Corp.*, 564 A.2d 651 (Del. Ch.1988), the continuing director feature in the Healthdyne rights plan does not infringe on the shareholders' right to elect a new board. The continuing director provision only ensures that the rights plan can not be redeemed or amended without the consent of at least one of the continuing directors. In this respect, the continuing director provision does not interfere with shareholder voting rights; nor is it coercive.

The court concludes that Invacare has failed to show a substantial likelihood of succeeding on the merits of its claim. The court also finds that Invacare will not suffer irreparable harm if the request for injunctive relief is denied and the issuance of an injunction is not in the public interest. Consequently, plaintiffs' Motion for Preliminary Injunction must be DENIED.

*B. Cross-Motions for Summary Judgment on Claims Related to Invacare's Proposed Bylaw Amendment*

■ Invacare formally notified Healthdyne that at the 1997 Annual Meeting of Shareholders of Healthdyne, Invacare will introduce a proposal to amend Healthdyne's bylaws. The proposed bylaw provides:

"the incumbent Board of Directors will be in violation of the Bylaws if such Board, including any requisite group of continuing directors, fails to immediately take all necessary action (prior to consideration of the election of directors at the Annual Meeting) to amend any shareholder rights plan of the Company to remove all such limitations."

Healthdyne filed a counterclaim against Invacare seeking a declaration as to the validity of the proposed bylaw and seeking to enjoin Invacare from soliciting proxies in support of the bylaw. The parties have filed cross-motions for summary judgment on the issue of the validity of the proposed bylaw amendment.

Summary judgment is only proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Because the procedure deprives the parties of a trial on the issues, the court must be careful to ensure that only those claims for which there is no need for a factual determination are disposed of by summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing whether the movant is entitled to summary judgment, the court must review the evidence and reasonable factual infer-

ences arising from it in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.* 951 F.2d 1235, 1237 (11th Cir.1992). When deciding cross-motions for summary judgment, the standard is the same as that for individual motions for summary judgment and the court must consider each motion independent of the other. *Heublin, Inc. v. United States* 996 F.2d 1455 (2d Cir.1993).

O.C.G.A. § 14–2–624(c) gives the directors of Georgia corporations the sole discretion to determine the terms and conditions of a shareholders rights plan. Such broad discretion includes the authority to include a continuing directors provisions such as the one contained in the Healthdyne rights plan. The bylaw proposed by Invacare would infringe upon the board's discretion by requiring the incumbent Healthdyne board to remove the continuing director provision.

Invacare argues that § 624(c) and its "sole discretion" language merely reflects the legislature's judgment that shareholders rights plans that discriminate against classes of shares are not prohibited by O.C.G.A. § 601 and does not give the board unlimited discretion to adopt any form of poison pill that the directors deem appropriate. Invacare's argument overlooks the plain language of § 624(c), which gives the board of directors sole discretion. As the Comment to this Code Section makes clear, however, this discretion is only limited by the directors' fiduciary obligations to the corporation.

Invacare further argues that its proposed bylaw is authorized by O.C.G.A. §§ 14–2–202(b), 14–2–801(b) and 14–2–1020(c). Section 202(b) provides that the "articles of incorporation may set forth ... provisions not inconsistent with law regarding ... defining, limiting, and regulating the powers of the corporation, its board of directors, and shareholders." Section 801(b) provides:

> All corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors, subject to any limitation set forth in the articles of incorporation, bylaws approved by the shareholders, or agreements

among the shareholders which are otherwise lawful.

Finally, § 1020(c) provides that "a bylaw limiting the authority of the board of directors ... may only be adopted, amended or repealed by the shareholders." Invacare contends that its proposed bylaw amendment is nothing more than an effort by the shareholders to limit the authority of the board to implement the continuing directors provision, and the above-cited Code sections give the shareholders the authority to so limit the board. Invacare's argument ignores the fact that the proposed bylaw is actually an attempt to control the board of directors and directly interferes with the board's authority under § 624(c) to set the terms and conditions of the rights agreement. The court finds that the proposed bylaw is contrary to § 624(c) as well as inimical to the corporate structure contemplated by the Georgia Business Corporation Code, which separates the rights and duties of directors from those of the shareholders.

The court also finds that any authority given to shareholders through § 801(b) does not apply to corporations whose shares "are listed on a national securities exchange or regularly quoted in the markets maintained by securities dealers or brokers...." O.C.G.A. § 14–2–731(c).[2] Section 731(c) goes further to say that any bylaw to limit the board's discretion or powers, must be approved by all of the shareholders. The Comment to § 801 states that subsection (b) must be read in conjunction with § 731(c). The court finds that Invacare's proposed bylaw is an attempt to limit the board's discretion to set the terms and conditions of the shareholders rights plan and ultimately runs afoul of the board fiduciary obligations to the corporation.

For the foregoing reasons, the court concludes that Invacare's proposed bylaw is invalid as a matter of law. Healthdyne's Motion for Summary Judgment is GRANTED, and Invacare's Motion for Summary Judgment is DENIED.

*C. Invacare's Motion to Strike Portions of Affidavit of Donald G. Margotta*

Invacare argues that the court should strike paragraphs 19–29 of Donald G. Mar-

---

2. Healthdyne is a publicly traded corporation.

gotta's June 4, 1997 affidavit because Professor Margotta does not have the requisite legal training to give the opinions he sets forth in the affidavit. The court finds that Professor Margotta's statements regarding Georgia law are made solely to provide the context for his economics' opinions. Consequently, the court denies Invacare's Motion to Strike.

## CONCLUSION

Plaintiff's Motion for Preliminary Injunction [37-1] is DENIED. Defendants' Motion for Summary Judgment [20-1] is GRANTED. Plaintiffs' Motion for Summary Judgment [43-1] is DENIED. Plaintiffs' Motion to Strike Portions of Affidavit of Donald G. Margotta [53-1] is DENIED.