92 F.3d 720
 133 Lab.Cas. P 11,751, 20 Employee Benefits
Cas. 1683,
Pens. Plan Guide P 23923S
 Larry B. RICKE, Trustee of Trust Established Pursuant to
Section 4049 of the Employee Retirement Income
Security Act of 1974, Appellee,
v.
ARMCO INC., Appellant.
Pension Benefit Guaranty Corporation, Amicus Curiae.
 No. 95-2367.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 11, 1995.
Decided Aug. 13, 1996.
Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 21, 1996.
 
 David A. Ranheim, Minneapolis, MN, argued (Paul R. Dieseth, on the brief), for appellant.
 Samuel L. Hanson, Minneapolis, MN, argued (Charles B. Rogers and Janel E. LaBoda, on the brief), for appellee.
 James J. Keightley, William G. Beyer, Stephen D. Schreiber and Kartar S. Khalsa, Washington, DC, on the brief of amicus curiae Pension Benefit Guaranty Corp.
 Before BOWMAN and LOKEN, Circuit Judges, and SCHWARZER,* District Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 This interlocutory appeal comes to us from the District Court's denial of the summary judgment motion of Armco Inc. Our jurisdiction is based on 28 U.S.C. § 1292(b) (1994). The gravamen of Armco's motion for summary judgment and the primary issue in this appeal is Armco's contention that this action for recovery of pension benefits, brought by Larry B. Ricke, a trustee appointed by the Pension Benefit Guaranty Corporation (PBGC), is barred by the settlement reached between Armco and 1440 of the 1465 individual employees who were covered by the now-defunct pension plan involved in this case. Like the District Court,[1] we conclude that the trustee's action is not barred by the settlement and we affirm the decision of the District Court. Although our reasons differ from those stated in the court's order denying summary judgment, we may affirm the judgment of a district court "on any grounds supported by the record." United States v. Lohman, 74 F.3d 863, 866 (8th Cir.1996), cert. denied, --- U.S. ----, 116 S.Ct. 2549, 135 L.Ed.2d 1069 (1996).
 
 I.
 
 2
 This case arises out of the bankruptcy of Reserve Mining Company, an iron ore mining and processing company whose operations were located in northern Minnesota. At all times relevant to this appeal, Reserve was a joint enterprise of First Taconite Company, a wholly owned subsidiary of Armco Inc., and Republic-Reserve, Inc., a wholly owned subsidiary of LTV Steel Company, Inc. In July 1986, LTV and Republic-Reserve filed for bankruptcy. In August 1986, Reserve and First Taconite also filed bankruptcy petitions. At the same time Reserve suspended its operations.
 
 
 3
 During Reserve's bankruptcy proceedings, the bankruptcy court appointed a trustee for Reserve. The trustee became the administrator of Reserve's hourly employee pension plan. On January 16, 1987, the administrator notified plan participants and the PBGC that Reserve would terminate the pension plan on May 13, 1987. Under the Employee Retirement Income Security Act of 1974 (ERISA) as amended by the Single-Employer Pension Plan Amendments Act of 1986 (SEPPAA), Pub. Law No. 99-272, 100 Stat. 237, the termination of a pension plan in such circumstances is called a "distress termination." See 29 U.S.C. § 1341(c) (Supp. IV 1986).[2] The notice to plan participants and the PBGC further indicated that plan assets were insufficient to pay all of the benefits to which plan participants and their beneficiaries were entitled, that is, some of the benefits were unfunded. While some of the unfunded benefits were guaranteed by the PBGC, others were not.[3]
 
 
 4
 The United Steelworkers of America, the union representing Reserve's hourly employees, then brought an action against Armco under § 301 of the Labor Management Relations Act of 1947 (codified at 29 U.S.C. § 185 (1988)) to recover, inter alia, the unfunded nonguaranteed pension benefits. Armco eventually settled with the Union. All but twenty-five of the 1465 Reserve employees represented by the Union joined the settlement and executed releases. In the fall of 1992, Armco provided $17.3 million for distribution to Reserve's employees or their beneficiaries in settlement of their claims, including their claims for unfunded nonguaranteed benefits. Of the twenty-five remaining employees, only nineteen had claims for unfunded nonguaranteed benefits. Those nineteen employees filed a separate lawsuit on July 24, 1992, that is still pending in the District of Minnesota, Warner v. Armco, Inc., No. 92-CV-120.
 
 
 5
 Throughout the course of the Union's lawsuit against Armco, the PBGC took no action to hold Armco liable as a contributing sponsor[4] of Reserve's pension plan for either the guaranteed or the nonguaranteed benefits that were not funded, nor did the PBGC ever take the position that the Union (or the employees) lacked standing to sue Armco to recover benefits promised by the defunct Reserve pension plan. Armco and the PBGC kept the possibility of further litigation alive by entering into a series of agreements to toll the running of the statute of limitations on claims made by Armco, the PBGC, or a PBGC-appointed trustee. The pension plan was not formally terminated until July 28, 1993. On that date, the plan administrator and the PBGC executed an agreement retroactively terminating the plan as of May 24, 1987.
 
 
 6
 In April 1994 the PBGC sued Armco to recover the cost of the unfunded guaranteed benefits to which it was entitled under 29 U.S.C. § 1362 (Supp. IV 1986).[5] Shortly thereafter the PBGC created a trust in connection with the distress termination of Reserve's pension plan pursuant to ERISA § 4049, 29 U.S.C. § 1349 (Supp. IV 1986) (repealed 1987), and appointed appellee Larry B. Ricke to serve as trustee.[6] On April 25, 1994, Ricke, in his capacity as the PBGC-appointed § 4049 trustee, filed this action against Armco seeking to recover unfunded nonguaranteed benefits. In his complaint, Ricke alleges that Armco is liable to the § 4049 trust "for the lesser of (a) 75 percent of the total outstanding amount of benefit commitments under the Plan which are in addition to those guaranteed by the PBGC, or (b) 15 percent of the actuarial present value of all benefit commitments under the Plan." Complaint at 5; see also 29 U.S.C. § 1362(c)(1)(A) (Supp. IV 1986) (setting forth liability to trust under circumstances of distress termination). Thus through these two lawsuits, the PBGC and Ricke sought to hold Armco liable for the unfunded pension benefits, both guaranteed and nonguaranteed, that Reserve had promised to its hourly employees.
 
 
 7
 Armco moved to dismiss Ricke's complaint, arguing that his action is (1) barred by the releases signed by the vast majority of plan participants and beneficiaries and (2) duplicative of the lawsuit filed by the nonsettling plan participants. Memorandum in Support of Armco's Motion to Dismiss at 2. Prior to the scheduled hearing on the motion to dismiss, a procedural dispute arose between the parties. In a published order, the District Court held that Armco's motion to dismiss was in fact a summary judgment motion that had been mislabeled in an attempt to avoid filing an answer to Ricke's complaint. Ricke v. Armco, Inc., 158 F.R.D. 149, 150 (D.Minn.1994) (order denying Armco's Motion to Confirm that an Answer Need Not be Filed). After Armco answered the complaint, the court denied Armco's motion for summary judgment. The court held that the individual plan participants and beneficiaries, in both the Union's action against Armco and in the Warner lawsuit, have no cause of action under ERISA as amended by SEPPAA against Armco for the unfunded nonguaranteed pension benefits. Therefore, the court concluded, neither the releases executed by the participants and beneficiaries nor the Warner lawsuit bars the § 4049 trustee's ERISA claim against Armco for such unfunded nonguaranteed benefits. Ricke v. Armco, Inc., 882 F.Supp. 896, 901 (D.Minn.1995).
 
 
 8
 After the District Court denied Armco's motion for summary judgment, Armco moved to amend the order to include the court's certification that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Armco's Memorandum in Support of Motion to Amend Order at 2 (quoting 28 U.S.C. § 1292(b) (providing for appeal of orders "not otherwise appealable")). In a supplemental order, the District Court granted Armco's motion. Armco then petitioned this Court for permission to appeal the District Court's interlocutory order denying Armco's motion for summary judgment. We granted the petition.
 
 
 9
 The District Court certified the following question for our review: "whether individuals may bring an action under [ERISA as amended by] the Single-Employer Pension Plan Amendments Act of 1986 ('SEPPAA') for unfunded non-guaranteed pension benefits, or if only the Section 4049 Trustee may bring such action." Supplemental Order at 1.[7] In essence, the District Court has asked us to decide whether the § 4049 trust mechanism adopted by SEPPAA displaced the right of individual employees to bring an action against their employers under § 502 of ERISA, 29 U.S.C. § 1132 (Supp. IV 1986), and § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1988). We conclude, however, that it is not necessary to reach the difficult question certified by the District Court. In the circumstances of this case and irrespective of any answer to the certified question, the trustee's action is not barred by the releases executed by the pension plan beneficiaries because, under principles of trust law, the releases were insufficient to preclude the trustee's claim against Armco.
 
 II.
 
 10
 Armco has not argued that the § 4049 trustee does not have a statutory basis for bringing an action against Armco for unfunded nonguaranteed benefits. Armco contends only that the employees and beneficiaries also have a statutory basis for bringing such an action. Therefore, according to Armco, either the employees and beneficiaries of the pension plan or the § 4049 trustee could have settled with Armco and executed releases of the claim. Once either did so, the other would be barred from bringing its statutory cause of action. Assuming for the purposes of this appeal that Armco's description of the interplay between the statutes authorizing individual and trustee actions is correct, an effective release of the claim for unfunded nonguaranteed benefits by either the beneficiaries or the trustee is an obvious precondition to a finding that the trustee's action is barred. Because we conclude that the releases in this case are not effective to release the claim of the § 4049 trustee for unfunded nonguaranteed benefits, we need not and do not reach the question certified by the District Court regarding the putative exclusiveness of the trustee actions authorized by ERISA as amended by SEPPAA.
 
 
 11
 The common law of trusts applies to trusts established under ERISA. Central States, Southeast & Southwest Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559, 570 & n. 10, 105 S.Ct. 2833, 2840 & n. 10, 86 L.Ed.2d 447 (1985). Specifically, this case involves the trust-law rules concerning the power of the beneficiaries of a trust to release the trust's claims against third parties. We begin with the observation that the general release signed by the vast majority of the affected employees does not explicitly release any claims that belong to any trust. The release states that the employee relinquishes "all claims that I may have against Armco ... that relate in any way to any of the claims described in the attached Notice." Claimant's Release and Assignment of Claims at R-2. The document further states that the employee understands that the release also is effective with respect to "any claim ... based directly or indirectly upon any claim which I have now released, including any such claim asserted by ... any other legal entity, specifically including but not limited to any welfare or pension plan." Id. at R-3. Whether this language includes the § 4049 trustee's claim is a question that the District Court did not consider and one that need not be resolved in order to decide that the District Court correctly denied Armco's motion for summary judgment. We assume for the purposes of this appeal that the language of the release is broad enough to encompass the claim of the § 4049 trust, even though that entity did not exist at the time the releases were executed. The issue we must now consider is whether the purported release of the claim is an effective release.[8]
 
 
 12
 Armco argues that beneficiaries have the power to settle and release claims of a trust if holding the released third party, in this case Armco, liable to the trust would result in a circuity of action. Armco's Brief at 13-14 & n. 8 (citing Restatement (Second) of Trusts § 328 cmt. b). Circuity-of-action would occur if the third party "were compelled to pay the trustee, the trustee would be compelled to pay the beneficiary and the beneficiary, having already been paid, would be compelled to repay" the third party. Restatement (Second) of Trusts § 328 cmt. b (1957). In this case, according to Armco, the beneficiaries of the § 4049 trust would have to pay Armco any monies recovered by the § 4049 trustee from Armco and distributed by him to the beneficiaries. This circuity-of-action, in Armco's opinion, means that the releases signed by the employees bar the trustee's action. Ricke, on the other hand, notes that the circuity-of-action rule applies only if the beneficiary releases a claim of the trust. Ricke contends that in cases involving multiple beneficiaries "[a] release by less than all of the beneficiaries does not bind the trust." Ricke's Brief at 39.
 
 
 13
 As a general rule, a beneficiary may not bring an action at law on behalf of a trust against a third party. See Restatement (Second) of Trusts § 281(1) (1957). The right to bring such an action belongs to the trustee. Id. § 280. Ordinarily a beneficiary cannot even assert a claim of the trust in equity. Id. § 282(1). It follows from these general principles that a beneficiary has only a limited ability to release a trust's claims against third parties. When a beneficiary purports to release a claim of the trust against a third party, the third party's liability is terminated "if, but only if, to hold the third person liable would result in circuity of action." Id. § 328. "Payment to the beneficiary," however, even when circuity-of-action would result, "does not give the obligor a legal defense to the claim" of the trustee. Id. § 328 cmt. a; see also Ennor v. Hodson, 134 Ill. 32, 25 N.E. 582, 583 (1890) (holding that payment to beneficiary does not prevent trustee from suing third party debtor). At most, the third party has an equitable defense to the trustee's action. Restatement (Second) of Trusts § 328 cmt. a. This rule is a long-standing principle of trust law. See, e.g., Smith v. Brown, 26 S.C. Eq. (5 Rich. Eq.) 291, 300 (1853) (subrogating third party to rights of beneficiary, "without disparagement of the rights of the trustee," because "it is not just that the beneficiary should be twice paid").
 
 
 14
 We are not convinced that the circuity-of-action rule applies to the facts of this case. First, Ricke would not be required to pay over all amounts recovered from Armco to the beneficiaries nor would the beneficiaries necessarily be required to repay Armco. For example, § 4049 trustees are authorized, by statute, to use trust funds to defray "the reasonable administrative expenses incurred in carrying out responsibilities" as trustee. 29 U.S.C. § 1349(a)(3) (Supp. IV 1986) (repealed 1987). Moreover, Ricke would not make lump-sum payments to the beneficiaries as soon as any judgment is paid by Armco; rather, distributions would be made on an annual basis. See id. § 1349(c). With respect to the beneficiaries' obligation to repay Armco, we note that the settlement between the Union and Armco apparently did not provide for Armco to pay the full seventy-five percent of its alleged liability for unfunded nonguaranteed benefits. See Ricke's Brief at 6 (stating that claims for unfunded nonguaranteed benefits were settled for "approximately 24% of their estimated value"). Ricke has the potential to recover more than twenty-four percent of the estimated value of the unfunded nonguaranteed pension benefits. In such circumstances, the beneficiaries, if required to repay any amount to Armco, certainly would not be under any obligation to repay Armco any more than the amounts received pursuant to the settlement.
 
 
 15
 Second, for the circuity-of-action rule to apply, the beneficiary must release the claim. See Restatement (Second) of Trusts § 328. In this case, not all of the beneficiaries have executed releases. A release by less than all of the beneficiaries does not bind the trust. See id. § 216 cmt. g (stating that consent of one beneficiary "to a deviation from the terms of the trust does not preclude the other beneficiaries from holding the trustee liable for breach of trust"); cf. id. § 282 cmt. i (stating that one of several beneficiaries may maintain suit in equity against third persons in limited circumstances but that all beneficiaries must be joined or the suit must be representative in nature). This rule is consistent with general principles of trust law applicable to trusts with multiple beneficiaries. See, e.g., id. § 337 (stating that in most circumstances trust can be terminated by consent of all beneficiaries); Anderson v. Anderson, 188 Minn. 602, 248 N.W. 35, 37 (1933) ("one beneficiary cannot prejudice the rights of another by making a settlement" and "where only one of several beneficiaries is negligent his negligence is not a bar to all recovery").
 
 
 16
 We note that even if the circuity-of-action rule were applicable to this case, and we think it is not, it would afford Armco a defense that is equitable in nature rather than legal. Such an equitable defense would not entitle Armco to judgment as a matter of law. In its answer to Ricke's complaint, Armco asserts a number of equitable defenses to Ricke's action based on Armco's prior settlement with most of the beneficiaries with respect to their claims for unfunded nonguaranteed benefits. The availability of such defenses and the extent to which they benefit Armco are matters for the District Court to decide in the first instance. To date Armco has sought only summary judgment, which requires Armco to show that it is "entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c), and an equitable defense based on the releases of some of the beneficiaries or partial payment to the beneficiaries does not meet the requirements of Rule 56(c).
 
 
 17
 The circuity-of-action rule aside, Armco contends that the employees had a right, under the law of trusts, to settle and release any claims of the trust any time prior to the PBGC's creation of a § 4049 trust, an event that occurred some seven years after Reserve notified its employees that it planned to terminate its hourly employee pension plan. Armco's Reply Brief at 2-3. Armco argues, correctly, that, "[u]nder an exception to the general rule" that only a trustee can assert claims of the trust, beneficiaries may bring an action "if the trustee is unavailable or not subject to the court's jurisdiction." Id. at 2 (citing 4 Austin W. Scott & William F. Fratcher, The Law of Trusts § 282.2 (4th ed.1989)). As we noted earlier, Ricke does not argue that under the law of trusts beneficiaries lack the power to release the claims of a trust that does not yet exist. See supra at 724 & n. 8. We thus accept as correct Armco's statement of the law on this point, and we further assume for purposes of this appeal that the releases executed in the settlement with Armco include the claim of the § 4049 trust.[9] This assumption, however, does not compel us to conclude that in the circumstances of this case the trustee's action is barred. Section 282.4 of Scott & Fratcher provides:
 
 
 18
 If there are several beneficiaries, any one or more of them can maintain a suit against the third person where the trustee wrongfully refuses to sue or is not subject to the jurisdiction of the court or where there is a vacancy in the office of trustee, making the other beneficiaries parties plaintiff or defendant. Where the beneficiaries are numerous, one or more of them can maintain a suit on behalf of the others as well as of themselves.
 
 
 19
 4 Austin W. Scott & William F. Fratcher, The Law of Trusts § 282.4 (4th ed.1989); see also Restatement (Second) of Trusts § 282 cmt. i. The implication of § 282.4 is that, in any action brought by less than all of the beneficiaries of a trust, all of the beneficiaries must be brought into the lawsuit, either as parties or through some representational mechanism such as a class action. The rationale for such a rule is obvious: a lawsuit by some of the beneficiaries will affect all of the beneficiaries, thus all of the beneficiaries must participate in the lawsuit. It therefore follows that for the beneficiaries to release a claim of the trust against a third party, all of the beneficiaries must act together. Here, although Armco obtained releases from a large majority of the Reserve employees, some of the employees did not settle and did not execute releases.
 
 
 20
 We hold that under the law of trusts the releases executed by the trust beneficiaries do not bar the § 4049 trustee's action, and we therefore affirm the District Court's denial of summary judgment to Armco.
 
 III.
 
 21
 In sum, we conclude that the order of the District Court denying Armco's motion for summary judgment must be affirmed. The District Court, in certifying this interlocutory appeal, asked us whether individuals may bring an action under ERISA as amended by SEPPAA for unfunded non-guaranteed pension benefits, or if only the § 4049 trustee may bring such action. We have concluded, irrespective of any answer that might be given to the certified question, that for the reasons stated above the beneficiaries have not released the claim of the § 4049 trust. Without an effective release of the claim of the § 4049 trust, the trustee's action may go forward. The District Court's denial of Armco's motion for summary judgment therefore is affirmed, though for reasons other than the reasons stated in the District Court's order, and the case is remanded for further proceedings.
 
 
 
 *
 The HONORABLE WILLIAM W. SCHWARZER, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota
 
 
 [2]
 The parties agree that the controlling version of ERISA in this case is ERISA as amended by SEPPAA. Our citations to the United States Code are to the versions of the sections relevant to this appeal, some of which have been amended several times. We have noted only the fact of repeal, not amendment
 
 
 [3]
 Armco disputes the existence of any unfunded nonguaranteed benefits, but assumes for purposes of this appeal that some nonguaranteed benefits were not funded by the pension plan. Armco's Brief at 2 n. 2
 
 
 [4]
 A contributing sponsor is a person who is responsible for meeting the funding requirements of an ERISA plan or a person who is under common control with the responsible person. See 29 U.S.C. § 1301(a)(13), (14) (Supp. IV 1986). The complaint in this case alleges that Reserve, which is a contributing sponsor of Reserve's hourly employee pension plan, was the alter ego of Armco. Although Armco disputes Ricke's allegation, see Armco's Brief at 16 n. 9, we assume for purposes of this appeal that Reserve is the alter ego of Armco and thus Armco is potentially liable as a contributing sponsor. See Minnesota Power v. Armco, Inc., 937 F.2d 1363, 1368 (8th Cir.1991) (holding that Reserve and First Taconite were alter egos of Armco)
 
 
 [5]
 Armco settled with the PBGC on June 30, 1994. The settlement called for Armco to pay the PBGC $10 million. See Ricke v. Armco, Inc., 882 F.Supp. 896, 898 (D.Minn.1995)
 
 
 [6]
 The effect of the PBGC's delay in appointing a trustee until April 1994, if it has any effect at all in this case, is not an issue in this appeal
 
 
 [7]
 We assume that the District Court intended to certify the issue as we have altered it because there are no provisions of SEPPAA that even arguably authorize individual actions
 
 
 [8]
 Ricke does not argue that as a matter of the law of trusts the beneficiaries lacked power to release future claims by a trust for their benefit that had not yet been created. We are aware of no such rule of law. In any event, because Ricke has not raised this argument, we do not address it
 
 
 [9]
 As noted above, see supra p. 724, the documents executed by the vast majority of the plan participants purported to release "any claim ... based directly or indirectly upon any claim which I have now released, including any such claim asserted by ... any other legal entity, specifically including but not limited to any welfare or pension plan." Claimant's Release and Assignment of Claims at R-3