Laura A. FUSCO, in her capacity as the Appointed Financial Trustee Under § 4049 of the Employee Retirement Income Security Act of 1974 for the Termination of the Retirement Insurance Plan for Hourly Rated Employees of Rome Cable Corporation, Plaintiff,

v.

ROME CABLE CORPORATION, Defendant.

No. 92–CV–1181.

United States District Court, N.D. New York,

Nov. 14, 1996.

---

9. It is not necessary for the court to determine when negotiations were concluded.

Hancock & Estabrook (David G. Linger, of counsel), Syracuse, NY, for Plaintiff.

Jacobs Persinger & Parker (Albert M. Rizzo, of counsel), New York City, for Defendant.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

### BACKGROUND

The court assumes familiarity with the background and prior proceedings in this action, including *Fusco v. Rome Cable Corp.*, 859 F.Supp. 624 (N.D.N.Y.1994) (*"Fusco I"*), wherein this court held, among other things, "that Rome Cable ... is declared and adjudged liable to the section 4049[1] trust for the outstanding benefit commitments[2] owed to the participants and beneficiaries of the Retirement Insurance Plan for Hourly Rated Employees of Rome Cable." *Id.* at 636 (footnotes added). Still unresolved after *Fusco I,* however, is the issue of the precise amount of Rome Cable's liability to the section 4049 trust for the unguaranteed benefits. It is that issue which is presently before the court on this motion by the plaintiff, Laura A. Fusco, in her capacity as the Appointed Financial Trustee Under § 4049 of the Employee Retirement Income Security Act of 1974 ("ERISA") for the termination of the Retirement Insurance Plan for Hourly Rated Employees of Rome Cable Corporation ("the Trustee"), for partial summary judgment.

1. This section, which has since been repealed, was formerly codified at 29 U.S.C. § 1349. Throughout this decision, the court will refer to sections 4049 and 1349 interchangeably.

2. Hereinafter the court will refer to these benefits as the "unguaranteed benefits."

3. Former section 1362(c) read as follows:
 (c) Liability to section 1349 trust
 (1) Amount of liability
 (A) In general
 In any case in which there is an outstanding amount of benefit commitments under a plan terminated under section 4041(c) or 4042, a person described in subsection (a)

Two other closely related issues also are presented by this motion: (1) whether Rome Cable is statutorily liable for interest on that amount; and (2) whether the Trustee is entitled to a statutory award of attorney's fees, costs and expenses pursuant to 29 U.S.C. § 1132(g)(1).

### DISCUSSION

The facts are not in dispute. Rather, resolution of the Trustee's motion requires the court to engage in statutory interpretation, and as such this motion is ripe for summary judgment. *See Heublein, Inc. v. U.S.,* 996 F.2d 1455, 1461 (2d Cir.1993) (citation omitted) ("Questions of statutory construction and legislative history present legal issues that may be resolved by summary judgment."); *see also Romano v. Terdik,* 939 F.Supp. 144, 146 (D.Conn.1996) ("The determination of whether 18 U.S.C. § 2520(c)(2) mandates an award of damages is a question of statutory interpretation and a legal issue that can be determined by summary judgment.").

### I. Amount of Rome Cable's Liability on the Principal

The parties agree that to determine the amount of Rome Cable's liability on the principal, the court must look to 29 U.S.C. § 1362. There is a disagreement, however, as to which version of that statute applies—the version in effect in September, 1987, when the plan was terminated, or the current version. Rome Cable urges application of the former version, which would limit its statutory liability to seventy-five percent of the unguaranteed benefits,[3] whereas the

shall be subject to liability under this subsection to the trust established under section 4041(c)(3)(B)(ii) or (iii) or section 4042(i) in connection with the terminated plan. Except as provided in subparagraph (B), the liability of such person under this subsection shall consist of the lesser of—
 (i) **75 percent of the total outstanding amount of benefit commitments under the plan, or**
 (ii) 15 percent of the actuarial present value (determined as of the termination date on the basis of assumptions prescribed by the corporation for purposes of section 1344 of this title) of all benefit commitments under the plan.

Trustee urges application of the current version, which declares that an employer such as Rome Cable is liable for the total amount of unguaranteed benefits.[4]

If the court finds that former section 1362 governs Rome Cable's liability, then the Trustee concedes that the amount of such liability would be limited to seventy-five percent of the unguaranteed benefits. Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment on the Amount of Liability of Rome Cable Corporation ("Pl.Reply") at 2. The Trustee takes the position, however, that Rome Cable's liability is no so limited because (1) under the law of the case doctrine, this court is bound to apply the current version of section 1362; and (2) it appears that the Pension Benefit Guaranty Corporation ("PBGC") employed the current version of section 1362 in arriving at total outstanding benefit commitments of $841,-171.00, and Rome Cable never challenged that calculation before the PBGC. The court will address these arguments in turn.

### A. Law of the Case

Relying upon *Fusco I, supra,* the Trustee contends that under the law of the case doctrine, in assessing Rome Cable's liability, the court should apply section 1362(c) as it presently reads. In discussing the Trustee's motion for partial summary judgment on the issue of liability, this court stated in *Fusco I:* "This particular motion is based upon the plaintiff's assertion that, as a matter of law, Rome Cable is liable to the section 4049 trust." *Id.* at 633. This court further stated, "In that regard, plaintiff points to 29 U.S.C.

§ 1362, which fully sets forth the parameters of a contributing sponsor's liability, such as Rome Cable." *Id.* At the conclusion of that statement, the court added a footnote, setting forth the current version of section 1362(c). *Id.* at 633 n. 14. Based upon that footnote, the Trustee maintains that it is the "law of the case" that the court should look to the current version of section 1362(c) to ascertain Rome Cable's liability.

Rome Cable retorts that the Trustee is conveniently misconstruing the law of the case doctrine in that she is failing to take into account an essential component of that doctrine. More specifically, under that doctrine, " 'a *legal decision* made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.'" *Mayer v. Cornell University, Inc.,* 909 F.Supp. 81, 83 (N.D.N.Y.1995) (emphasis added) (quoting *North River Ins. Co. v. Philadelphia Reinsurance Corp.,* 63 F.3d 160, 164 (2d Cir. 1995)) (quoting in turn *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243, 250 (D.C.Cir.1987)). Rome Cable contends that because the legal issue of which version of section 1362(c) was not before the court in *Fusco I,* the reference therein to the current version of that statute does not require the court to apply that version now, when, for the first time, the issue has arisen as to which version of that statute governs its liability. The court agrees. In *Fusco I,* this court did not ex-

---

Affirmation of Albert M. Rizzo (Dec. 23, 1994), exh. D thereto (emphasis added).

4. Currently section 1362(c) reads in pertinent part as follows:

A person described in subsection (a) of this section shall be subject to liability under this subsection to the trustee appointed under subsection (b) or (c) of section 1342 of this title. The liability of such person under this subsection shall consist of—
(1) the outstanding balance of the accumulated funding deficiencies (within the meaning of section 1082(a)(2) of this title and section 412(a) of Title 26) of the plan (if any)
. . .,
(2) the outstanding balance of the amount of waived funding deficiencies of the plan

waived before such date under section 1083 of this title or section 412(d) of Title 26 (if any), and
(3) the outstanding balance of the amount of decreases in the minimum funding standard allowed before such date under section 1084 of this title or section 412(e) of Title 26 (if any), together with interest (at a reasonable rate) calculated from the termination date in accordance with regulations prescribed by the corporation. The liability under this subsection shall be due and payable to such trustee as of the termination date, in cash or securities acceptable to such trustee.
29 U.S.C. § 1362(c) (West 1996).

pressly decide which version of section 1362 should govern the *amount* of Rome Cable's liability herein; nor in *Fusco I* did this court decide that issue by implication. It was not necessary for the court to determine the amount of Rome Cable's liability in order for it to determine that Rome Cable was statutorily liable to the section 4049 trust.

■ There are two additional reasons Rome Cable overlooks, but which further persuade the court that the law of the case doctrine has no place in determining whether the former or the current version of section 1362(c) applies here. First of all, because this court's decision in *Fusco I* was not a final order, the law of the case doctrine is not implicated. *See Matter of Grand Valley Sport & Marine, Inc.*, 143 B.R. 840, 854 (Bkrtcy.W.D.Mich.1992) (notice order which, by its terms, did not become a final order unless no objections to the same were filed within a specified time period, did not become final order which could be invoked as the basis for a law of the case doctrine where an objection was filed to that order); *Vander Malle v. Ambach*, 667 F.Supp. 1015, 1030 n. 14 (S.D.N.Y.1987) (internal quotations and citation omitted) (emphasis in original) ("[T]he [law of the case] doctrine depends upon a prior *final* decision of an issue or claim by the court or by an appellate tribunal[.]").

■ Second, even if in *Fusco I* this court had been squarely faced with the issue of which version of section 1362 governs, and even if this court had expressly held that the current version of that statute applies, nevertheless, the law of the case doctrine would not necessarily require the court to adhere to that prior ruling. "[T]he '[l]aw of the case is not a commandment etched in stone.'" *Mayer, supra*, 909 F.Supp. at 83 (quoting *Childress v. Taylor*, 798 F.Supp. 981, 993 (S.D.N.Y.1992)) (other citation omitted). Thus, as this court recognized in *Mayer*,

"when a court is asked to reconsider its own prior rulings, under the 'more flexible branch,' of the law of the case doctrine, it may do so 'when those previous decisions were substantially erroneous or when reconsideration is necessary to avoid injustice.'" *Id.* (quoting *Scottish Air. Intern. v. British Caledonian Group*, 152 F.R.D. 18, 25 (S.D.N.Y.1993)) (other quotations and citations omitted). As will be seen, the court concludes that the former version of section 1362(c) is determinative of Rome Cable's liability in this action. Therefore, assuming *arguendo* that the court had previously held that the current version of that statute should apply, the court would not, under the law of the case doctrine, be required to apply that version now because to do so would be substantially erroneous. Consequently, despite the Trustee's assertion to the contrary, the court finds that even if the law of the case doctrine properly could be invoked here, that doctrine does not require a finding that section 1362 in its current form is controlling on the issue of the amount of Rome Cable's liability. Therefore, because the court is not bound by the law of the case doctrine, it will analyze the issue of which version of section 1362 governs the present action without regard to *Fusco I*.

### B. Exhaustion of Administrative Remedies

Before doing so, however, the court must address the Trustee's passing reference to the fact that apparently, in calculating the amount of unguaranteed benefits, the PBGC employed the current version of section 1362(c), and to this date Rome Cable has not administratively challenged that calculation.[5] Because Rome Cable did not mount such a challenge, the Trustee strongly urges the court to enter judgment in her favor and against Rome Cable in the amount of $841,151.00.[6] This argument is puzzling for

---

5. To support this assertion, the Trustee points to two PBGC regulations—29 C.F.R. §§ 2606.33 and 2606.53. The former regulation requires, among other things, that a request for reconsideration of a PBGC initial determination be filed within thirty days after the date of such determination. Similarly, the latter regulation provides, among other things, that an administrative ap-

peal of an initial determination must be filed within forty-five days after the date of such determination.

6. The parties do not dispute that the PBGC has determined that the present value of the unguaranteed benefits at issue is $847,151.00. Defendant's Statement in Response to Plaintiff's State-

several reasons. First of all, the Trustee concludes this argument by contending that because Rome Cable did not challenge the PBGC's calculation before the agency, Rome Cable cannot assert "that a question of fact exists with respect to the calculation of the amount of outstanding benefit commitments." Memorandum in Support of Plaintiff's Motion for Summary Judgment on the Amount of Defendant's Liability ("Pl. Memo.") at 5. The Trustee is missing the point. As mentioned at the outset, there are no factual issues created by this record; the only issues before this court are legal issues as to which statute or statutes govern the amount of Rome Cable's liability as to the principal and the interest thereon, if any. In any event, the court does not read Rome Cable's motion papers as asserting the existence of a factual issue which would preclude summary judgment.

The second aspect of this argument which is bothersome is that although not couched in precisely these terms, presumably the Trustee is asserting that Rome Cable failed to exhaust its administrative remedies before the PBGC with respect to the amount of its liability on the outstanding benefit commitments.[7] If, indeed, the Trustee is arguing exhaustion, the court finds it curious that she did not specifically invoke 29 C.F.R. § 2606.7, which expressly states, in relevant part, "[A] person aggrieved by an initial determination of the PBGC covered by this part, ..., has not exhausted his or her administrative readies until he or she has filed a request for reconsideration ..., and a decision granting or denying the relief requested

has been issued." 29 C.F.R. § 2606.7 (1995). As already mentioned, the court also finds it troubling, as just mentioned, that the Trustee did not adequately brief this issue. In any event, because, under some circumstances, a court should not engage in judicial review where administrative remedies have not been exhausted,[8] the court will address this exhaustion issue now.

 Exhaustion "is premised on the notion that it is better to allow an agency to employ its expertise first in developing the facts." *Golden Hill Paugussett Tribe of Indians v. Weicker,* 39 F.3d 51, 58 (2d Cir.1994) (citation omitted). "The exhaustion requirement protects the integrity of the administrative process and prevent[s] parties from avoiding agency procedures." *Id.* Stated somewhat differently, "[t]he exhaustion doctrine is concerned with the timing of judicial review and provides that a court should resist premature intervention in a dispute." *Olympus Corp. v. United States,* 627 F.Supp. 911, 917 (E.D.N.Y.1985), *aff'd on other grounds,* 792 F.2d 315 (2d Cir.1986), *cert. denied,* 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988). "Judicial relief is premature when an agency has not had the opportunity to fully develop factual findings, apply its expertise to new issues, and to exercise its discretionary powers." *Id.* (citing, *inter alia, McKart v. United States,* 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969)).

 Putting aside the procedural posture in which this exhaustion argument comes before the court,[9] because the reasons favor-

---

ment Pursuant to Rule 7.1(f) of the Local Rules of the Northern District of New York at ¶ 1; Plaintiff's Statement Pursuant to [former] Local Rule 10(j) Rule 7.1(f) in Support of Summary Judgment Motion ("Pl.L.R. 7(f) Statement") at 2, ¶ 9. (In their Rule 7.1(f) statement, plaintiff states that the amount is "$841,17 1.") *Id.* (emphasis added). That appears to be a typographical error, however, in light of the letter from the PBGC, attached as exhibit A to the affidavit of plaintiff's counsel, wherein it specifically indicates that the amount of outstanding benefit commitments is "847,15 1[.]" Affidavit of Martha L. Berry (Oct. 5, 1994), exh. A thereto (emphasis added).

**7.** Admittedly, the court is speculating when it frames the Trustee's argument in terms of ex-

haustion, but the court's task was made unnecessarily arduous by the fact that the Trustee does not offer any legal analysis of this issue. Likewise, Rome Cable's opposition papers are silent in this regard.

**8.** *See, e.g., Matter of Gould Pub. Co.,* 934 F.2d 457, 459–60 (2nd Cir.1991) (internal quotations and citation omitted) ("As a general rule, a litigant complaining of administrative action is required to exhaust all of his administrative remedies before he will be permitted to seek judicial relief.").

**9.** Usually, but not always, it is the administrative agency (here the PBGC), which is a party and, in turn, raises the failure to exhaust argument. *See,*

ing exhaustion are absent here, the court concludes that exhaustion is not required. One well-recognized exception to the exhaustion requirement is "when the issue : . . presented . . . is one of purely statutory interpretation." *Miss America Organization v. Mattel, Inc.,* 945 F.2d 536, 544 (2nd Cir.1991) (internal quotations and citations omitted). The primary issue which this motion presents—the amount of Rome Cable's statutory liability for the unguaranteed benefits—does not involve statutory interpretation *per se.* Nonetheless, the same reasons for excusing exhaustion when a court is faced with an issue of statutory interpretation apply here where, in essence, Rome Cable is claiming that the PBGC acted *ultra vires* [10] in determining the amount of its statutory liability for the unguaranteed benefits because it applied the current version of section 1362, rather than the version in effect at the time of the distress termination. As with statutory interpretation, in determining which statute governs Rome Cable's liability, there is no need for the court to defer to the PBGC's expertise or discretion. Furthermore, because the issue of Rome Cable's statutory liability does not require any factual development, there is no need for the court to require exhaustion so that the PBGC can employ its expertise in developing the facts. *See Touche Ross & Co. v. Securities & Exch. Comm'n,* 609 F.2d 570, 577 (2nd Cir.1979) (exhaustion not necessary where issues presented were whether a Security & Exchange Commission rule had been promulgated without statutory authority, and whether the plaintiff had been burdened by the agency acting without authority of law).[11] As the foregoing demonstrates, the interests requiring exhaustion are not particularly strong here.

An additional reason for excusing Rome Cable's failure to exhaust (assuming *arguendo* it had such an obligation) [12] is that implicit in Rome Cable's argument as to which statute governs its liability is the assumption that, in determining the amount of liability for the unguaranteed benefits, the PBGC exceeded its powers when it applied the current version of 29 U.S.C. § 1362(c), instead of the version in effect when the plan was terminated. *See Greenberg v. Comptroller of the Currency,* 938 F.2d 8, 12 (2nd Cir.1991) (citation omitted) ("Unless an agency is exceeding its jurisdiction, courts ordinarily do not interfere before the agency has completed its task."); and *American Cyanamid Co., Lederle Lab. v. Roudebush,* 411 F.Supp. 1220, 1222 (S.D.N.Y.1976) (exhaustion requirement may be avoided where, among other things, "the administrative agency has grossly exceeded its powers[ ]"). There is one other factor which also weighs in favor of excusing exhaustion under the particular facts of this case (again, assuming exhaustion is a prerequisite here), and that is that requiring exhaustion undoubtedly would

e.g., *Shanbaum v. United States,* 32 F.3d 180, 182 (5th Cir.1994) (district court granted PBGC's motion to dismiss based upon plaintiff's failure to exhaust administrative remedies regarding the amount of his guaranteed benefits). For the sake of argument, the court assumes that the Trustee is the appropriate party to raise the issue of exhaustion in this declaratory judgment action.

10. "[C]ourts generally apply the term '*ultra vires*' to any action taken without authority." *U.S., Dept. of Interior v. 16.03 Acres of Land,* 26 F.3d 349, 355 n. 1 (2d Cir.1994) (and cases cited therein), *cert. denied sub nom., Nelson v. U.S. Dept. of Interior,* —— U.S. ——, 115 S.Ct. 899, 130 L.Ed.2d 784 (1995).

11. *See also Diapulse Corp. of Am. v. Food & Drug Admin.,* 500 F.2d 75, 78 (2nd Cir.1974) (plaintiff's failure to exhaust administrative remedies did not bar judicial review of the issue of whether a fee charged by the Food and Drug Adminis-

tration was legally authorized because, *inter alia,* "on this legal question [a question upon which the agency's Commissioner had already issued an opinion] . . ., agency expertise is of little help to a reviewing court[ ]").

12. Evidently the PBGC did not notify Rome Cable of the availability of a regulatory appeals procedure or the regulatory exhaustion requirement, or both. *See* Berry Aff., exh. A thereto. Albeit in a slightly different context, courts have recognized that the ERISA requirement that all administrative remedies under plan documentation be exhausted prior to seeking judicial review, can be waived " 'where there is a material issue of fact as to whether the plaintiff was informed of the appeals process[.]' " *Crean v. New York City District Council of Carpenters Pension Fund,* 94–CIV. 1702 SHS, 1996 WL 389248, at *3 (S.D.N.Y. July 11, 1996) (quoting *Novak v. TRW, Inc.,* 822 F.Supp. 963, 969 (E.D.N.Y.1993)) (other citations omitted).

lead to undue delay.[13] *See Skubel v. Sullivan,* 925 F.Supp. 930, 936–37 (D.Conn.1996) (in considering whether to bar a suit based upon exhaustion, one of five "primary" factors is whether exhaustion would "lead to undue delay"). For all of these reasons, to the extent that Rome Cable may have had an obligation to exhaust its administrative remedies with respect to the PBGC's determination of the amount of its liability for the unguaranteed benefits, that fact does not, as the Trustee suggests, bar this court from independently examining the issue of which statute governs the amount of Rome Cable's liability on the principal.

### C. Governing Version of Section 1362?

At last, the court is free to turn to the central inquiry on this motion and that is whether, pursuant to former 29 U.S.C. § 1362(c), Rome Cable is liable for "75 percent of the total outstanding amount of benefit commitments under the plan," or, whether under the current version of that statute, it is liable for one hundred (100) percent of the unguaranteed benefits.

■■■ "The provisions of ERISA at issue in this case [including section 1362], ..., are a type of insurance designed to ensure that employees are not deprived of retirement benefits in the event that a pension plan is terminated before sufficient funds are accumulated in the plan." *See United Steelworkers v. United Engineering, Inc.,* 52 F.3d 1386, 1390 (6th Cir.1995) (*"United Steelworkers II"*) (citation omitted). "Under ... ERISA ... as amended by the Single–Employer Pension Plan Amendments Act of 1986 (SEPPAA), ..., the termination of a pension plan in such circumstances is called a distress termination[,]" and that is exactly the type of termination to which Rome Cable found itself subject in 1987. *See Ricke v. Armco Inc.,* 92 F.3d 720, 721–22 (8th Cir. 1996) (citations, quotations and footnote omitted). "This scheme is intended to en-

sure the benefits of the pension plan to the participants and beneficiaries and possibly to salvage the employer's business, thereby safeguarding the employment of the participants." *Ricke v. Armco Inc.,* 882 F.Supp. 896, 898 (D.Minn.1995) (*"Ricke I"*) (internal quotations and citation omitted).

■■■ Prior to SEPPAA's effective date of April 7, 1986,[14] ERISA did not provide for payment of unguaranteed benefits in the event of a distress termination. Congress remedied that gap in ERISA by enacting SEPPAA, which amended ERISA to provide, "for the first time, the protection of non-guaranteed pension benefits." *United Steelworkers II, supra,* 52 F.3d at 1391. "SEPPAA established a trust fund called the 'Section 4049 trust' that would receive funds from employers and distribute those funds to plan participants to cover [un]guaranteed benefits. SEPPAA made employers liable to the trustee for up to 75% of the amount of [un]guaranteed benefits." *Id.* "In 1987, Congress repealed SEPPAA and enacted the Pension Protection Act (PPA), ... which is the current law regarding payment of unfunded pension benefits." *Id.* (citation omitted). "Under the PPA, the PBGC is entitled to seek recovery of 100% of the [un]guaranteed pension benefits." *Ricke I, supra,* 882 F.Supp. at 899. Of particular significance for purposes of this motion is the fact that "[t]he PPA amendments do not apply to pension plans, ..., that were terminated prior to December 17, 1987." *In re Chateaugay Corp.,* 87 B.R. 779, 788 (S.D.N.Y.1988) (emphasis added), *aff'd on other grounds,* 875 F.2d 1008 (2d Cir.1989), *rev'd on other grounds,* 496 U.S. 633, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990); *see also In re Chateaugay Corp.,* 130 B.R. 690, 699 n. 10 (S.D.N.Y. 1991) ("This section [1349] was repealed in 1987 but still applies to pension plan terminations initiated between January 1, 1986 and December 17, 1987.").[15] It necessarily

---

**13.** As the parties are all too well aware, this action has been plagued by delay both in terms of the PBGC's seeming failure to promptly act and, more recently, by this court's regrettable, but unavoidable delay in rendering this decision. In any event, certainly the plan participants and beneficiaries should not be forced to wait any

longer for a final resolution of this protracted matter.

**14.** *Ricke I, supra,* 882 F.Supp. at 899.

**15.** *Cf. United Steelworkers v. United Engineering,* 839 F.Supp. 1279, 1283 n. 3 (N.D.Ohio 1993) (*"United Steelworkers I"*), *aff'd on other grounds,*

follows that because section 1362(c) in its present form was a part of the PPA amendments, that section does not apply to this plan termination, occurring, as it did, prior to December 17, 1987.

The holdings in both *Chateaugay* cases are wholly consistent with the legislative history of section 1362, which, as to the former version of that section, designated an effective date of January 1, 1986. 29 U.S.C. § 1362 Historical and Statutory Notes (West Supp. 1996). Likewise, as part of the PPA amendments, section 1362(c) in its current form became effective after December 17, 1987. *Id.* Read together, then, there was only a short period of time—from January 1, 1986, until December 17, 1987—when section 4049 trusts were used as the mechanism under ERISA for payments of benefits above guaranteed levels. In other words, the section 4049 termination trust mechanism was an "interim solution[,]"[16] and, as it happens, Rome Cable's distress termination occurred during the narrow time frame of that interim solution. Congress' clear legislative intent,[17] in conjunction with the two *Chateaugay* cases noted above, convinces the court that SEPPAA, of which former section 1362(c)

52 F.3d 1386 (6th Cir.1995) (Even though the subject plans were terminated prior to SEPPAA, and even though SEPPAA was repealed in 1987, the court found that that statute was relevant because it "represents an interim amendment to ERISA, and indicates the direction Congress was taking in amending ERISA in the mid–1980s.").

16. *See United Steelworkers I, supra,* 839 F.Supp. at 1283.

17. As just explained, Congressional intent was clear as to the time frame for the availability of section 4049 trusts as a means of securing payment of unguaranteed benefits after a distress termination. Thus, there is no need for the court to engage in a retroactivity analysis. *Contra Covino v. Reopel,* 89 F.3d 105, 106 (2d Cir.1996) (because the Prison Litigation Reform Act of 1995 "contains no effective date provision, and none of its provisions gives any explicit indication as to whether the Act would have any application to pending appeals[,]" Court was required to engage in retroactivity analysis in accordance with standards enunciated by the Supreme Court in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). Even if this court were to engage in a retroactivity analysis, it observes that the result would be the same; the amount of Rome Cable's liability would be determined by reference to former sec-

was a part, rather than the PPA amendments to ERISA, governs the amount of Rome Cable's liability in this instance.[18] Moreover, the current version of section 1362(c) pertains to liability to a trustee appointed under section 1342(b) or (c), which in this case is the PBGC. It does not speak to liability to a trustee such as plaintiff Fusco who was appointed under 29 U.S.C. § 1341(c)(3)(B)(iii)(II).[19] Thus the fact that section 1362 in its present form governs liability to a different type of trustee than plaintiff Fusco makes her reliance upon that particular statute all the more tenuous. Consequently, for all of these reasons, the court finds that Rome Cable is liable under SEPPAA, and former section 1362(c) in particular, for "75 percent of the total outstanding amount of benefit commitments[.]" *See* Rizzo Affirm., exh. D thereto (former 29 U.S.C. § 1362(c)).

## II. Interest

The next issue which the court must address is whether Rome Cable is liable for interest on these unguaranteed benefits. Given the amount of money potentially in-

tion 1362 and not the present version of that statute. That is so because, as the Supreme Court instructed in *Landgraf,* "absent clear congressional intent," a statute enacted after the events at issue in a lawsuit would not apply to that lawsuit if "the new statute would have retroactive effect, i.e., [if] it would impair rights a party possesses when [it] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." 511 U.S. at ——, 114 S.Ct. at 1505. Certainly that is the situation in this case. If the court were to apply the PPA, which became effective after the PBGC approved the plan's termination, the result would be to impose greater liability on Rome Cable for the unguaranteed benefits (one hundred percent versus seventy-five percent) than Rome Cable had anticipated in reliance upon SEPPAA.

18. As an aside, the court observes that the Trustee's suggestion that the court should look to the current version of section 1362(c) appears to be at odds with her assertion that "[s]ince Rome Cable's distress termination was effective on September 14, 1987, it falls under the provisions of … SEPPAA., … and former § 4049 of ERISA." Pl.L.R. 7(f) Statement at 2, ¶ 5 (citation omitted).

19. Rizzo Affirm. at ¶ 4, and exh. B thereto.

volved, particularly because the Trustee is asserting that the interest accrual date should be September 14, 1987 (the date of the plan termination), the issue of interest is not trivial.

Putting aside the issue of whether Rome Cable may be held liable for interest under 29 C.F.R. § 2622.7,[20] the court will consider whether, as the Trustee strongly contends, Rome Cable may be found liable for interest on the principal based upon former 29 U.S.C. § 1349, which as noted earlier, has since been repealed.[21] Rome Cable offers several reasons as to why former section 1349 has no place in the court's analysis of the interest issue.

▮ First, Rome Cable believes that it should not be held liable for interest because former section 1362(c) is silent in that regard. Thus, according to Rome Cable, the court's inquiry should end there: Rome Cable should not be required to pay interest on the principal for which it is liable under former section 1362(c). Perhaps Rome Cable's interpretation of former section 1362(c) would be defensible if that section were read in isolation. Despite Rome Cable's assertion to the contrary,[22] former section 1362(c) can-

not be read alone; it must be read in light of the statutory scheme and purpose at the time. *See Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962) (internal quotations and footnotes omitted) ("[I]t [is] fundamental that a section of a statute should not be read in isolation from the context of the whole Act; and that in fulfilling our responsibility in interpreting legislation, we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy.") When that is done, the court is convinced that former section 1349, taken together with former section 1362(c), provide an additional basis for finding Rome Cable liable for the interest on the principal herein.

True, there is nothing in former section 1362, which set forth the liability to a section 1349 trust, pertaining to interest on liability for unguaranteed benefits.[23] In the court's opinion, however, Rome Cable makes too much of the fact that former section 1362(c) is silent on the issue of interest, because former section 1349 did contain an interest provision. More specifically, former section

---

**20.** The court deliberately is not deciding that issue because it has serious reservations as to which version of that regulation applies here, and neither party addressed that issue. Instead, the parties both assume that the version of section 2622.7 upon which plaintiff Fusco is relying (the version as amended June 30, 1993), is the version which governs this case. That version unequivocally states, however, that it applies "with respect to a plan for which a notice of intent to terminate under section 4041(c) of the Act is issued or proceedings to terminate under section 4042 of the Act are instituted **after** December 17, 1987." 29 C.F.R. § 2622.1(b) (1995) (emphasis added). Therefore, based upon the plain language of that regulation, certainly it appears that the current version of part 2622, wherein section 2622.7's interest provision is found, would not apply in this case where the notice of intent to terminate, as well as the proceedings to terminate, were instituted **prior to** December 17, 1987.

Insofar as part 2622's predecessor is concerned, the court observes, without deciding, that it appears that that part, and section 2622.7 in particular, may well form a basis for finding Rome Cable liable for interest herein. But again, because evidently the parties did not rely upon the version of part 2622 in effect during the relevant time frame, the court declines to decide

whether under Rome Cable may be held liable for interest under **any** version of 29 C.F.R. § 2622.7.

**21.** There is a certain irony and inherent inconsistency in the Trustee now taking the position that a **former** section of ERISA applies with respect to interest, when, as earlier discussed, insofar as liability on the principal is concerned, she strongly urges application of the **current** version of another section of ERISA.

**22.** The court recognizes, as Rome Cable stresses, that "[t]he familiar rules of statutory construction look first to the language of the statute itself because, when looking at its language, a court should presume that the statute says what it means[;] [i]n the usual case, where the language of the statute is clear, that is the end of the analysis." *Motor Vehicle Mfrs. v. New York State Dept. of Envtl. Conservation,* 17 F.3d 521, 531 (2nd Cir.1994) (internal quotations and citations omitted). By the same token, however, as set forth above, the court should not take a single provision of a statute out of context, particularly where to do so would undermine the purpose of the statutory scheme.

**23.** *See* n. 3, *supra.*

1349(c)(1)(A) read, in pertinent part, as follows:

### (c) Distributions from trust

#### (1) In general

Not later than 30 days after the end of each liability payment year ... with respect to a terminated single-employer plan, the corporation, or its designee ..., **shall distribute from the trust** ... to each person who was (as of the termination date) a participant or beneficiary under the plan—

> (A) ..., an amount equal to the outstanding amount of benefit commitments to such person under the plan **(including interest** calculated from the termination date), to the extent not previously paid under this paragraph, ....

29 U.S.C. § 1349(c)(1)(A) (repealed) (West Supp.1996) (emphasis added in body).

■ Clearly under that statute, then, a trustee such as plaintiff Fusco has a statutory obligation to distribute, from the section 1349 trust, "an amount of benefit commitments ... including interest calculated from the termination date[.]" *Id.* It stands to reason that plaintiff Fusco cannot fulfill that statutory obligation if she does not collect interest from Rome Cable. Moreover, adoption of Rome Cable's position would "contravene the 'elementary canon of construction that a statute should be interpreted so as not to render one part inoperative[,]' " [24] in that Rome Cable's interpretation would require the court to disregard the Trustee's statutory obligation to distribute the unguaranteed benefits "including interest." *See* 29 U.S.C. § 1349(c)(1)(A). Accordingly, the court finds that former section 1362(c), when read in conjunction with former section 1349(c)(1)(A), mandates the conclusion that Rome Cable is liable for the interest on the unguaranteed

benefits, as well as for the benefits themselves.

The court is compelled to at least briefly consider Rome Cable's remaining arguments against application of former section 1349. Rome Cable's assertion that the Trustee is improperly relying upon former section 1349(c) for the imposition of interest because "that section deals with distributions from the Section 4049 Trust to the beneficiaries, not the amount of liability imposed upon a contributing sponsor [such as Rome Cable][ ]" is not persuasive. Letter from attorney Rizzo to Court of Jan. 9, 1995, at 2. As just explained, it would be illogical to require a section 4049 trustee such as plaintiff Fusco to distribute interest on the unguaranteed benefits, without authorizing her to collect such interest in the first place. Rome Cable's bald assertion that "[w]e can only assume from the fact that ERISA section 4049 includes interest that Congress did not perceive the interplay between the two sections[,]" is similarly unavailing. Letter from attorney Rizzo to Court of Feb. 27, 1995, at 3. Indeed, the opposite appears true; because ordinarily interest is a feature of ERISA liability,[25] when Congress enacted former section 1362(c), arguably there was no need for it to specifically mention interest in that particular statute because it was expressly mentioned in former section 1349.

The court further observes that the legislative history of former section 1349 provides yet another reason for concluding that Rome Cable is also liable for interest on the principal in this action. *See Shea v. County of Rockland,* 810 F.2d 27, 29 (2nd Cir.1987) (statutory interpretation includes examination of "the meaning drawn from the face of [the] statute," as well as an examination of the legislative history). The "House Explanation" of SEPPAA's section 4049 trust mechanism expressly states, "The amount payable to each participant and beneficiary is

---

24. *Department of Revenue of Or. v. ACF Industries,* 510 U.S. 332, 341, 114 S.Ct. 843, 849, 127 L.Ed.2d 165 (1994) (quoting *Mountain States Telephone & Telegraph Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985)); *see also U.S. v. Anderson,* 15 F.3d 278, 283 (2d Cir.1994) (citations omitted) ("This conclusion is consistent with the canon of construction that courts will

avoid statutory interpretations that render provisions superfluous.").

25. *See, e.g.,* 29 U.S.C. § 1368(a) (West Supp. 1996) (PBGC's lien for liability, which includes interest); and 29 U.S.C. § 1399(c)(6) (West 1985) (providing for imposition of interest for withdrawal liability).

adjusted each year to reflect **interest payable from the termination date,** as well as any amounts previously paid by the section 4049 trustee." Pl. Reply Memo, Appendix A thereto (emphasis added). As that language indicates, Congress anticipated that a section 4049 trustee such as plaintiff Fusco would pay interest to plan participants and beneficiaries.

Finally, the court would be remiss if it did not acknowledge that there are equitable considerations which also have factored into its decision to award interest. Not requiring Rome Cable to pay interest under the particular facts of this case would run afoul of the general proposition that "ERISA is ... to be construed liberally to safeguard the interests of fund participants and beneficiaries[.]" *Landry v. Air Line Pilots Ass'n Intern., AFL–CIO,* 901 F.2d 404, 417 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). Furthermore, a finding that Rome Cable is not obligated to pay interest would also undermine the remedial purpose of ERISA generally, and the remedial purpose of SEPPAA in particular.[26] *See id.* Simply put, it seems inherently unfair to deprive the plan beneficiaries and participants of interest which they could have been earning on the unguaranteed benefits, had they received those benefits sooner.

### A. Accrual Date

The court's inquiry cannot end with this finding that Rome Cable is liable for the interest on the principal, because as previously alluded to, the parties disagree as to the accrual date. The Trustee asserts that interest should accrue from September 14, 1987—the effective date of the PBGC's approval of the plan termination; whereas Rome Cable contends that interest should accrue from "[o]n or about April 1994[,]" which, according to Rome Cable is when the indebtedness arose because that is when Rome Cable received notification from the PBGC as to the amount of its liability for the unguaranteed benefits. Letter from attorney Rizzo to Court of Feb. 27, 1995 at 3. Given the unequivocal language of former section 1349(c)(1)(A), however, the court sees no reason to look beyond the plain language of that statute which provided that interest be "calculated from the termination date[.]" 29 U.S.C. § 1349(c)(1)(A). In contrast to former section 1362(c) where, when that section was read in conjunction with former section 1349(c)(a)(A) a doubt or ambiguity arose as to whether an employer could be held liable to a section 4049 trustee for interest,[27] the latter statute, even when read in light of ERISA as a whole, could not be more clear: interest thereunder must be calculated from the plan termination date. *See id.*

### III. Attorney's Fees and Costs

Lastly, plaintiff Fusco is seeking her attorney's fees, costs and expenses[28] pursuant to 29 U.S.C. § 1132(g)(1), which grants courts the discretion to "allow a reasonable attorney's fee and costs of action to either party."[29] 29 U.S.C. § 1132(g)(1) (West 1985). The parties both recognize that in exercising its discretion under that statute, a court should consider five factors:

'(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of

---

**26.** As the Fifth Circuit observed in *Landry,* "[a]mending ERISA in 1986 with ... SEPPAA ..., Congress declared that the policy of the legislation was to increase the likelihood that participants and beneficiaries under single-employer defined benefit pension plans will receive their full benefits." 901 F.2d at 417 n. 37 (internal quotations and citations omitted). For the reasons set forth in section I(C) above, the plan participants and beneficiaries in this case will not be receiving their full benefits. However, receipt of interest on the seventy-five percent of those benefits which they will be receiving is entirely consistent with the statutory purpose of insuring full funding of pension benefits.

**27.** *See* section II.

**28.** For the sake of brevity hereinafter all references to "attorney's fees" shall be read as also including costs and expenses.

**29.** Subdivision one of that statute reads in its entirety as follows: "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion **may** allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1) (West 1985) (emphasis added).

fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.'

*Mendez v. Teachers Ins. and Annuity Ass'n,* 982 F.2d 783, 788 (2d Cir.1992) (quoting *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 871 (2d Cir.1987)). Not surprisingly, after weighing those factors, the parties reach conflicting results. Naturally, the Trustee believes that those factors augur in favor of awarding her statutory attorney's fees, whereas Rome Cable urges a contrary result—that the Trustee not be allowed any such recovery.

 After careful consideration of each of the *Chambless* factors, the court agrees with Rome Cable that this is not a situation where an award of attorney's fees under section 1132(g)(1) is warranted. As to the first *Chambless* factor, while this litigation has been protracted, with each party being represented by zealous counsel, the court cannot find that Rome Cable acted in bad faith. Furthermore, given Rome Cable's precarious financial state, as the court understands it to be, the second *Chambless* factor also does not weigh in favor of holding Rome Cable responsible for the Trustee's attorney's fees.

In addition, because of the unique circumstances of this plan termination, being one of few plans terminated under the short-lived SEPPAA, an award of fees in this case would not "deter other persons from acting similarly under like circumstances[.]" *See id.* As is evidenced in part by the fact that the court's decision in conjunction with this motion was not immediately forthcoming, the parties' respective positions were both viable and, in this court's opinion, the arguments made by Rome Cable on this motion were not wholly without merit. Finally, although the fifth *Chambless* factor does militate in favor of an award here, that factor alone is not dispositive. Consequently, in its discretion, the court denies the Trustee's motion for attorney's fees, costs and expenses pursuant to 29 U.S.C. § 1132(g)(1). *See New York Teamsters Conference Pension Fund v. Boening Bros.,* 891 F.Supp. 81, 88 (N.D.N.Y.1995),

*aff'd* 92 F.3d 127, 135 (2d Cir.1996) (district court declined to award ERISA attorney's fees, and Second Circuit affirmed, where even though employers had the ability to pay such an award and the action would confer benefits on a group of participants, there was no evidence of bad faith on the party of the employers; the law in that area was unsettled; the employers' position was not wholly without merit; and other employers in a similar situation would benefit more from clearer contractual obligations and more fully developed case law, rather than from the imposition of sanctions).

To summarize, the motion for partial summary judgment pursuant to Fed.R.Civ.P. 56 by plaintiff Laura A. Fusco, in her capacity as the appointed financial trustee under § 4049 of the Employee Retirement Income Security Act of 1974 for the Termination of the Retirement Insurance Plan for Hourly Rated Employees of Rome Cable Corporation, is hereby GRANTED, thus rendering defendant Rome Cable Corporation liable to plaintiff in her trustee capacity for seventy-five (75) percent of the total unguaranteed benefits in accordance with former 29 U.S.C. § 1362(c)(1)(A)(i). Defendant Rome Cable Corporation is also liable for interest on that amount, calculated from the termination date of the plan. To the extent that plaintiff Fusco is seeking attorney's fees, costs, and expenses pursuant to 29 U.S.C. § 1132(g)(1), however, her motion is DENIED.

Ordinarily, in this district the Clerk of the Court prepares the judgments. Because of the unique nature of this case, however, the parties are hereby directed to file and serve within ten (10) days of the date hereof, proposed judgments, which shall include detailed calculations, including supporting affidavits if necessary, as to how they calculated both the principal and the interest thereon.

IT IS SO ORDERED.